PEOPLE v. LIVERPOOL, LONDON AND GLOBE INSURANCE COMPANY.

*Insurance — fire policy — concealment of facts by insured — insurable interest — limitation of action on policy.*

The doctrine that the assured is bound, although no inquiry be made to disclose any fact within his knowledge, is not applicable, at least, to its full extent to policies of insurance against fire.

In an action upon a fire insurance policy, a defense was that carpenter work was being done in the building insured, which was not disclosed to the insurers. There was no actual concealment or fraud proved, no misrepresentation or intentional suppression of facts, nor was any inquiry made, at the time of issuing the policy, as to the uses for which the building was to be applied. *Held*, that it was for the jury to say whether there was a concealment of the facts by the insured which would avoid the policy.

The trustees of an asylum, in pursuance of an act of the legislature, conveyed such asylum to the people, and a fire insurance policy was issued in the name of the people. *Held*, that the people had a right to insure in their own name for the benefit of the owners, and to bring action as trustees for a loss on the policy.

By a provision of a policy " in any case of a disputed claim," no action should be maintained unless it was instituted " within twelve months after the alleged cause of such claim." After a loss on the policy, proofs of loss were forwarded to the insurers, who made several formal objections to their sufficiency, and asked for further proofs, but made no objection to the claim for loss. *Held*, that the insurers, by making only formal objections to the sufficiency of the proofs, admitted that the claim was not a disputed one, and waived, for the time, the provision as to the time of commencing an action, and an action could be brought after the expiration of the twelve months.

EXCEPTIONS ordered to be first heard at general term.

The cause was tried at the Albany circuit, in December, 1872. The action was upon a policy of insurance issued by the defendants on the Binghamton inebriate asylum. It appeared upon the trial, that in 1867, in pursuance of an act of the legislature, the trustees of said asylum conveyed it to the State.

On October 28, 1869, the defendants issued to the people a policy of insurance upon the building for one year. Three thousand dollars was upon the rear buildings or wing.

On March 4, 1870, this rear wing was wholly consumed by fire, and the damage and loss exceeded the amount insured, so that, if the defendants are liable at all, they are liable for the full amount of $3,000, and interest.

On May 24, 1870, proofs of loss were sent by Austin Birdsall,

claiming to be vice-president of the board of trustees of the asylum, to James Hendricks, at Albany, who was the general agent of the company.

These proofs of loss were objected to by defendants, by letter of June 4, 1870, for certain reasons therein specified. It also appeared in evidence that William R. Osbourn, the treasurer of the asylum, and a member of the board of trustees, was, at the time of the issuing of the policy, and had been for some years, the local agent of the defendants in the city of Binghamton, and was directed to issue the policy in question. That on the 25th of October, 1869, Osbourn sent an application for the insurance, which is referred to in the opinion. And that at this time there was carpenters' work, in making repairs in rebuilding the building insured, being done on the premises.

Defendants' counsel moved for judgment in the case, dismissing the complaint, upon the whole case as presented, upon the ground:

First. That the plaintiffs have no claim against the defendants upon this policy of insurance, because the State had not, and has not, the ownership of the property in question.

Second. A condition precedent to any recovery is proper proof of loss, and such proper proof has not been given. There is no proof of loss by the party insured, that is, by the people of the State.

Third. The suit was commenced more than twelve months after the alleged cause of the claim, that is, nineteen months after the loss.

Fourth. The policy was void, *ab initio*, because the application did not truly state the condition of the property, and there was concealment, or fraudulent representations, or both of these, which avoided the policy.

The court dismissed the complaint, on the ground stated in the opinion The plaintiffs' counsel asked the court to submit to the jury whether the company in taking the risk relied upon their own knowledge, or the representation of the plaintiffs; also, the question whether Osbourn had knowledge, which requests were refused by the court. The plaintiff duly excepted to the rulings, and a bill of exceptions was made and settled, which the court directed should be first heard, at general term, with a stay of proceedings.

*Francis C. Barlow*, attorney-general, for plaintiff.

*N. B. Hoxie*, for defendant.

MILLER, P. J. The plaintiffs claim to recover in this action, upon a policy of insurance, issued to them by the defendants, on the 28th of October, 1869, on the New York State Inebriate Asylum, for the sum of twenty thousand dollars. At the circuit, the judge, passing by several grounds which were urged, dismissed the plaintiffs' complaint for the sole reason that the person making the application who was the defendants' agent, for the purpose of obtaining and issuing policies in the locality of the asylum, was not the agent of the company so as to bind them in this policy, and there being a carpenter's shop on the premises, the policy was void, because the application did not state truly the condition of the property insured, and by means thereof there was a concealment of a material fact in applying for the insurance.

If the dismissal can be upheld, upon any of the grounds which were taken, or upon any other arising on the evidence which could not have been obviated by the plaintiffs, then there was no error.

The ground taken by the judge presents the most important question in the case, and may therefore very properly be first considered. The concealment of a material fact, under ordinary circumstances, would necessarily vitiate the policy ; but if the person who receives the application, accepts the insurance, and issues the policy, is an authorized agent of the company, and has knowledge or means of knowing the existence of the alleged fact, and voluntarily accepts the insurance, with such knowledge, and without interposing any objection on that account, such act of the agent would constitute a waiver of the increased risk.

It is argued by the learned counsel for the plaintiffs, that Osbourn was the defendants' agent in the transaction, although he was treasurer of the asylum; that at least the question whose agent he was, should have been submitted to the jury ; that notice, if any he had, of the carpenters' work came to him while he was acting as the agent of the company, and, even conceding that he was both the agent of the insurer and the insured, that no such defense was interposed in the defendants' answer, or made at the trial, and, therefore, the difficulty, if it existed, was obviated. These views present serious questions which are not free from embarrassment and are entitled to careful consideration. As we are of the opinion that this branch of the case may be properly disposed of, without regard to the points stated, we will proceed to examine the question whether admitting Osbourn to be only the

agent of the plaintiffs, or that he did not acquire notice, while engaged in the business of the defendants, there was still any concealment which avoided the policy.

The application for insurance, which was introduced in evidence, is of the most general character. It does not state whether the building insured is of stone, brick or wood, or describe its particular dimensions or location. The same remark applies to the policy of insurance, and one of the conditions and stipulations to which the policy is subject, provides that the basis of the contract is the application of the insured, and if it does not truly describe the property, the policy shall be null and void. The policy itself contains no special provisions in reference to an omission to state, with entire accuracy, every thing which has any relation to the risk taken, nor were any questions asked or propounded in the policy, or by the defendant's agent, in regard to the same. The insurer has a right to take all risks, and at such rates as may be agreed upon. He has also a right to relieve the insured from all responsibility in giving information, and circumstances may arise where such an intention ·may properly and legitimately be inferred. If an applicant desires his house insured, and no questions are asked, and no attempt made at concealment, can it be said that there was fraud, because a portion of the house was occupied by carpenters who were engaged in making reparations, and that it was not a house, as a matter of law? If the application was to insure a house, and it was proved to be a carpenter's shop or a manufactory where combustible materials were employed, it might well be urged that the facts appearing were evidence of concealment, but without some proof of an intent to conceal or defraud the company, where it is not thus entirely clear from the circumstances, it is a fair question for a jury to determine whether there was any such concealment. The doctrine that the assured is bound, although no inquiry be made to disclose every fact within his knowledge, is not applicable, at least to its full extent, to policies of insurance against fire. *Burritt* v. *Saratoga C. M. F. Ins. Co.*, 5 Hill, 192.

In the case cited, after laying down the foregoing proposition. BRONSON, J., says: "If a man is to consent to insure my house, without taking the trouble to inquire of what materials it is built, how it is situated with reference to other buildings, or to *what uses it is applied*, he has no ground of complaint that the hazard proves to be greater than was anticipated, unless I am chargeable with

some misrepresentation concerning the nature or extent of the risk. It is, therefore, the practice of companies which insure against fire, to make inquiries of the assured in some form, concerning all such matters as are deemed material to the risk, or which may affect the amount of premium to be paid."

In *Marshall* v. *Columbian Ins. Co.*, 27 N. H. 366, the court say, " there are cases which hold that where no inquiries are made as to the title or situation of the property, and nothing appears to show that fraud was designed, a suppression of facts will not make void the policy," and see cases there cited.

In the case at bar there was no actual concealment or fraud proved, no representation whatever, and nothing showing an intentional suppression of facts. Nor was any inquiry made as to the uses for which the building was to be applied. Can it, then, be said that the insured has reason to complain when there has been neglect in making the required investigation, and that the insurer is chargeable with concealment, because the hazard was more than ordinary risks, which may or may not have been anticipated ?

It is certainly not manifest that the insured was called upon to speak, without being solicited to do so, or that, in any way, there was any intentional concealment of the real facts. When certain questions are put to a party desiring a life insurance and fully answered, it is not a fraudulent concealment if he omits to state facts material to the risk, not called for by any specific or general question. *Rawls* v. *Am. Ins. Co.*, 27 N. Y. 282. The rule here laid down is, at least, equally applicable where the insurers do not put any questions whatever to the applicant for insurance. See, also, Bliss on Ins. 98.

In any view which may be taken of the subject, as there was no direct proof of concealment, it should have been submitted to the jury whether the circumstances of the case showed a concealment of the facts. In *Rawlins* v. *Desborory*, 2 Mood. & Rob. 328, in an action upon a life insurance policy, at *nisi prius*. Lord Ch. J. DENMAN said to the jury, that if they thought the deceased, without being interrogated as to his habits, was aware of them, and knowing of *their importance, studiously concealed them from the insurers,* they should find for the defendant ; but the mere *non-communication* of his habits of life, would not, of *itself*, vitiate the insurance, even though those habits, in the opinion of the jury, *tended to shorten life.*

Following the principle here laid down, it is quite obvious that in

a case where there were no circumstances of themselves showing a fraudulent intention, it was error to take the case from the jury, who were the proper tribunal to consider all the facts bearing upon the question, and in granting the motion to dismiss upon the ground stated by the learned judge.

The objection that the plaintiffs had no title or insurable interest in the buildings, at the time of the insurance or the fire, is not well taken. This point was not very fully argued, and no sufficient reason is given for upholding the nonsuit upon any such ground. It is, however, a complete answer to this position to say, that the State was in possession, and, even without title, had a right to insure in their own name for the benefit of the real owners, and to bring this action as trustees of an express trust. *Waring* v. *Indemnity Fire Ins. Co.*, 45 N. Y. 606, 613. Nor is there any foundation for the objection that no accurate and particular account of the loss was rendered, as required by the policy of insurance and the conditions attached.

The principal point urged in this connection is, that the proofs were not made by any person authorized to represent the people of the State. The proofs presented were signed and verified by the vice-president of the asylum. As the State can only act through agents, and the legislature have recognized the board of trustees and placed them in charge of the asylum as such agents, the authority of the vice-president cannot well be disputed by the defendant. In other respects no serious questions are urged as to the deficiency of the proofs, and they appear to be full and ample and within the reasonable requirements of the policy.

The omission to bring a suit for more than twelve months after the occurrence of the fire, we think, is not a bar to the plaintiff's right to recover in this action. The condition of the policy was, "that in any case of a disputed claim," no suit or action should be sustained, unless such action be instituted "within twelve months after the alleged cause of such claim," and the question to be determined turns upon the construction to be given upon language by no means clear, and which is quite ambiguous. While limitations of this character are held to be valid, they are also regarded with extreme jealousy by the courts, and may be waived by any act or declaration which induces the insured to wait. *Ames* v. *N. Y. Union Ins. Co.*, 14 N. Y. 253 ; *Dobin* v. *F. . J S. Ins. Co.*, 5 Lans. 275, S·

C., 57 Barb. 5, § 8; *Carrol* v. *C. H. Bank. Ins. Co.*, 10 Abb. 316; *Mayor, etc.,* v. *Hamilton Ins. Co.*, 39 N. Y. 45.

In the last case cited, it was held that the limitation in a policy that the action shall be commenced "within the term of six months after any loss or damage shall accrue," is to be construed in connection with the other conditions of the policy, and, thus construed, means that the action shall be commenced within six months after the right to sue the company has accrued. The fire in the case last cited occurred on the 5th day of October; the proofs of loss were not adjusted until the 12th of February, and the suit was decided to be properly brought within six months after the expiration of sixty days from the latter date.

The claim here was first presented on the 24th of May, and on the 4th of June the defendant forwarded objections to the proofs of loss, stating that they objected to the papers as being insufficient and defective, for certain informalities which were stated. The defendant did not state that they disputed the claim; but objected to the form in which it was presented. They did not deny that they had insured the property for the amount named, or specifically object to payment, or state any ground upon which they regarded it as invalid, void, or the subject of dispute. They did not claim that any concealment or fraud had been practiced, or suggest any defense to the policy, but left it open for the plaintiffs to supply the defects of proofs which were stated, without limiting the time when they should be furnished. As no time was fixed, may it not fairly be claimed, that the plaintiffs had a right to delay indefinitely furnishing the proofs, and finally to rely upon those which were furnished? If the plaintiffs had furnished further and corrected proofs at a future period, and the defendant had refused to pay, on the ground that there had been fraud or concealment on account of any other supposed defense, then there would have been a "disputed claim" within the meaning of the condition.

As the case stood, with no intimation, whatever, that the defendants meant to interpose any but mere formal objections, with not a word in their notice about a dispute; with no notice afterward that it was intended to assail the claim, substantially, or to refuse payment, if proper and satisfactory proofs were made, or make any defense, whatever, to the claim; and, in fact, with an implied suggestion of payment, upon further proofs being presented, it cannot well be claimed that there was such a dispute as was contemplated

by the condition stated, giving to the phraseology employed that liberal construction which the authorities warrant. When a party disputes a claim, he refuses to pay, denies its validity, and alleges such defense as he has. He is not content with making technical objections to the mode and manner, and particular form in which it is presented. By interposing mere formal objections, he virtually concedes that he has no other, and, at least, for the time being, waives any other. He does not dispute the validity or legality of the claim itself.

The communication, therefore, of the 4th of June did not of itself make out a "disputed claim" within the meaning of the policy, and as the defendant did not, at any time afterward, and until it set up a defense to the action brought, dispute the claim of the plaintiffs, the action was brought in due season.

As the nonsuit cannot be upheld upon any of the grounds stated, a new trial must be granted, with costs to abide the event.

*New trial granted.*