MOSES A. BLEDSOE v. MARY NIXON et al.

Upon an appeal from a judgment of the Superior to the Supreme Court, the whole case is taken up to the latter Court, whether the appellant give an undertaking with sufficient security (or in lieu thereof make a deposit of money) to secure the amount of the judgment, or to secure the costs, only as provided in sections 303 and 304 of the C. C. P., the right of the appellee to issue execution in case of the undertaking being to secure the costs of the appeal only is given instead of the deposit of money to abide the event of the appeal.

When an appeal is taken from the Superior to the Supreme Court, a proceeding to obtain a new trial on account of newly-discovered testimony cannot be instituted in the Superior Court, but must be brought in the Supreme Court, and upon a proper case that Court will remand the cause so that the Superior Court may take jurisdiction and proceed to do what may be right. But if the newly-discovered testimony applies to only a part of the judgment, the Supreme Court will retain the cause and order proper issues to be made up

upon the alleged newly-discovered testimony and sent down for trial in the Superior Courts and will impose such terms upon the applicant for the new trial as may be deemed proper.

The rules in relation to applications for new trials upon the ground of newly-discovered testimony and the principles upon which they are founded, discussed and explained in the opinion filed by the Chief Justice.

The cases of *Jarman* v. *Sanders,* 64 N. C. Rep. 367 and *Heileg* v. *Stokes,* 63 N. C. Rep. 612, cited and approved.

This was a CIVIL ACTION commenced in the Superior Court of WAKE county on the 5th of April, 1873, and brought for the purpose of obtaining a new trial on account of newly-discovered testimony, under the following circumstances :

The plaintiff had brought the original suit against the defendants for the purpose of obtaining an account and settlement of certain matters of difference between him and Jere. Nixon, the intestate of the defendant, Macy. The case was referred to a referee, and upon stating the account, the plaintiff claimed as a credit the price of a certain tract of land called the Meadow land, which he alleged that he had contracted in writing to sell to the intestate, Jere. Nixon, in January, 1852, and had delivered the said written instrument to the said Nixon. The defendants denied in their answer the existence of such instrument, and the plaintiff entirely failed to prove it or its contents, and the referee thereupon rejected the claim. The referee afterwards made his report to the January Term, 1873, of the Superior Court, and his Honor, *Watts, J.,* confirmed the same, and rendered a judgment from which the plaintiff appealed, giving undertaking for securing the costs of the appeal only. The Supreme Court at its January Term, 1873, affirmed the judgment so far as it affected this part of the case (sec. 68, N. C. Rep. 521.) After this judgment was rendered, the plaintiff discovered a copy of the written contract of the sale of the Meadow tract of land in the hands of a gentleman who he had no reason to suspect had possession of it; and as he expected by means of this copy to

prove this existence of the original, he brought this action in the Superior Court of Wake in order to get the benefit of it, and the case coming on to be heard at the June Term of the Superior Court before his Honor, *Albertson, J.*, he gave a judgment for the plaintiff, from which the defendants appealed.

*Haywood* and *Fowle*, for the defendants.
*Smith & Strong*, for the plaintiff.

PEARSON, C. J. Under the present system *justice* is administered according to the principles of law and equity as heretofore established, by one tribunal. The distinction between actions at law and suits in equity, and the forms of all such actions and suits is abolished, and the Courts proceed according to C. C. P. and the other statutes concerning pleading and practice, and such rules of procedure as this Court may from time to time adopt.

It follows that the cases cited by the counsel of the defendant in regard to the mode of proceedure before the Chancellor in England on the equity side of his docket, and before Courts of equity in this country, that acted under the old system, have no application to our case, except so far as they may furnish remote analogies, and suggest reasons for the rules to be adopted by this Court in the absence of legislation. In *Jarman* v. *Sanders*, 64 N. C. Rep. 367, it is established as a rule of practice that a Judge of the Superior Court in which final judgment had been entered for plaintiff, may, upon satisfactory proof by affidavits, of *fraud* on the part of the plaintiff in obtaining the judgment, allow the defendant, as a motion in the cause, to ask that the judgment be set aside, and that a trial *de novo* be had, and may thereupon grant the restraining order for twenty days, and on motion, an injunction until the trial of the action. This preliminary motion may be allowed *ex*

*parte,* unless the Judge desires the aid of the argument of counsel in regard to the sufficiency of the affidavit and the like. The motion for a proceeding of this kind, which has a remote analogy to a *writ of error* for *matter of fact* may, in accordance with allowance of a motion to rehear, *for error in law* under the 16th rule, 63 N. C. Rep. 668, be entertained within two years after the final judgment, unless the party be guilty of laches in not making the motion as soon as he has an opportunity to do so, after a knowledge of the fact on which the motion was based. Such motions are not embraced under C. C. P., sec. 132, *Jarman* v. *Sanders, supra.*

Our case differs from *Jarman* v. *Sanders* in this : The case was brought to this Court upon appeal and final judgment has been entered, and the motion does not seek to have the whole judgment set aside on the ground of fraud, but simply to have the finding of the referee ("that the alleged agreement in respect to the sale of the Meadow tract was not in writing signed by the parties,") set aside on the allegation of new matter, which did not come to the knowledge of the defendant until the case was being heard upon exceptions in this Court, not embracing the finding in regard to this contract of sale.

The fact that final judgment was entered in this Court makes a material difference. By the appeal *the cause* was brought up to this Court, and as a matter of course a " motion in the cause" can only be entertained by the Court where the cause is. This was admitted by the counsel of plaintiff, but they took the position that inasmuch as C. C. P., title XIII, requires two undertakings, one to cover costs, the other to perform the final judgment, and the latter undertaking had not been perfected. This failure on the part of the client left "the cause" in the Superior Court. This is not the meaning of C. C. P. in regard to appeals. If the undertaking to perform the final judgment is not perfected, or a money deposit made, the purpose was to raise this money

BLEDSOE *v.* NIXON *et al.*

deposit by means of an execution, after "the cause" had been carried up to the Supreme Court by the appeal; but "the cause" is by the appeal taken out of the Superior Court and carried up to the Supreme Court, no matter in which of the three ways provision be made for the performance of the final judgment.

The fact that the motion does not seek to have the whole judgment set aside on the ground of fraud, but only to set aside one item on the allegation of new matter, also making a material difference in regard to the mode of procedure. Under the present system we are sailing without a compass, and can only look to the statutes and "the reason of the thing" in navigating this unknown water. If the objection had extended to the whole judgment and the whole of the finding of the referee, the difficulty could possibly have been met by remanding the cause, with directions that the Superior Court make such orders as were necessary and proper on a motion in the cause to give the plaintiff (Bledsoe), should the facts be found, as he alleges, on the newly discovered evidence, appropriate relief, treating the finding of the referee and the concurrence of the Judge as the finding of the fact by a special verdict of a jury, under the instructions of the Judge, and in no wise as the award of arbitrators; but the objection only extends to one item in the judgment and the finding of the referee. So it seems to be manifest that "the cause" cannot be remanded; to remand a part and retain the other parts would be an absurdity.

After hearing full arguments, and upon much consideration, our conclusion is (under the provision of the constitution which authorizes this Court to "issue any remedial writ necessary to give it a general supervision and control of the inferior Courts," Art. 4, sec. 10, and in analogy to the rule by which this Court may before the trial send other issues down to be submitted to a jury,) to send a writ to the

Superior Court directing that an issue be submitted to a jury, so as to test the sufficiency of the newly-discovered evidence to establish the allegation of a written contract of sale signed by Nixon and Bledsoe, and sealed and delivered as their deed, this latter fact being requisite to repel the statute of limitations. We consider the general doctrine settled that when a decree or judgment has been rendered against a party by reason of his ignorance of a fact that would have caused the decision to have been in his favor, relief will be given without an allegation of fraud, except so far as it may be implied from a willingness to take benefit of an accident and enforce a demand, which, although he may not have known before the trial, he is obliged to know after the new matter is discovered, to be unjust. The doctrine is founded upon the broad principle that it is against conscience to enforce an unjust claim. *Standish* v. *Radley*, 2 Atk. 178, is a leading case. There the party was relieved from a decree which was shown manifestly to be unjust, by the discovery of receipts that had been placed in the hands of a third person for safe keeping.

The Courts, however, aware of the importance of the rule "*interesse reipublicæ ut sit finis litium*," lend a reluctant ear to applications for leave to call in question final judgments and decrees, either on the ground of fraud, accident or ignorance of material evidence, and requires satisfactory proof that the party has been guilty of no laches, and that there is probable cause to believe that on a second trial the result will be different. For the same reason a motion to rehear upon a suggestion of error in a matter of law is only allowed upon the certificate of two members of the Bar, which is taken to be evidence of probable cause. 16th rule, *supra*.

Here a difficulty presents itself. This Court cannot try *issues of fact*, but we think it is met by the case *Heilig* v. *Stokes*, 63 N. C. Rep. 612.

Acting on the ruling in that case we find that Bledsoe has

not been guilty of such laches as to shut the door of the temple of justice against him. When the administrator and the widow and children of Nixon denied that they had in their possession the written agreement alleged by Bledsoe, and further averred that they had never seen or heard of it, and did not believe there ever was such an agreement, and when Cook could not help him, and when Cantwell (in whose hands he swears the instrument was the last time he ever saw it) swore he never had in possession any such instrument, and produced the skeleton of a deed, with *blanks* for the name of the bargainor, as the only paper writing in regard to the matter that he had ever had in his possession, Bledsoe could do nothing more, and was forced to submit to the finding of the fact against him. Whether the newly-discovered evidence of what purports to be a copy of the agreement, alleged by Bledsoe to have been executed by Nixon and himself, will enable him to establish his allegation, is a matter about which we express no opinion farther than to say that we think it lays a sufficient foundation for his motion to be allowed to have another trial upon such terms as the Court may deem it just to impose.

The suggestion of laches in not moving upon this Court in the matter, as soon as he discovered the new matter pending the trial, at the last term, is met by the fact that soon thereafter he applied to the Judge of the Superior Court and instituted the present proceeding under the advice of counsel learned in the law.

We must do the counsel the justice to say that in the "*transition state*" of our rules of practice, we hold them in no fault, for supposing that the remedy was by action in the Superior Court, and not by motion in this Court. Had the hearing of the cause been interrupted by a motion of the kind it would not have then been considered, and would have stood over to this term for argument, so there has been no time lost, and the effect will be as to costs only.

Had this been a cause in the Superior Court, according to our liberal practice, the summons and complaint could have been taken as an affidavit on motion, in support of a motion "in the cause," but unfortunately "the cause" was in this Court, and not in that, so we are unable, with the utmost stretch of liberality, to treat the proceeding as a motion "in the cause" befere this Court. It follows that the proceeding before his Honor must be dismissed with costs.

We have, however, been put judicially in possession of certain matters, upon which it is our duty to take action. We consider the complaint and affidavits as a sufficient foundation for a motion in this Court to have relief, to the extent of directing an issue to be tried in the Superior Court.

The clerk will issue a writ to the Judge of the Superior Court to have the following issue tried by a jury, that is to say, "was a contract for the sale of the Meadow tract, of which the paper hereunto attached marked "M." is a copy, signed, sealed and delivered by Jere. Nixon and Moses Bledsoe, or was the agreement under which Nixon took possession of the meadow tract a verbal one?"

This order is made upon these conditions precedent:

1. That within twenty days after service of a copy thereof Bledsoe pays into the office of this Court the balance of the judgment rendered January Term, 1873, minus the sum of $—— claimed as a credit on account of the contract of sale of the Meadow tract, (unless the same had been already collected by execution from the Superior Court.)

2. That within the said twenty days Bledsoe files with the Clerk of the Court a deed (to be approved of by the clerk, and to be held subject to the order of this Court,) to the heirs of said Nixon, in fee simple for the Meadow tract.

3. That Bledsoe gives an undertaking in the sum of $250, with sureties, to be approved by the clerk for the cost of this proceeding.

During the twenty days execution for the sum of $——

now in controversy is enjoined. Should the conditions precedent be complied with the injunction will be continued until the hearing. The deed being accepted by the Court as a security for the performance of its final judgment and as a means of executing the judgment, so as to make it a final determination of the rights of the parties; for if the contract was binding, Bledsoe will have credit for the price and interest as agreed on, and the deed will be delivered to the heirs of Nixon. If the contract was not binding, the heirs of Nixon or their assignees will be required to surrender the possession to Bledsoe and to account for the rents and profits.

So really the controversy only involves the difference between the present value of the land together with the rents and profits, and the price agreed on and the interest.

Order of the Court below reversed, and the proceeding in that Court dismissed at the cost of Bledsoe.

The motion of Bledsoe in this Court allowed.

PER CURIAM. Order of the Court below reversed, and motion of the plaintiff in this Court allowed.