ED. H. HICKS, Exec'r *v.* THOMAS E. SKINNER and WIFE, and others.

(SEE 71 N. C. REP. 539.)

It is well settled that one may abandon his domicile of origin, either with the design of acquiring another, or with the design of acquiring no other; and then until he acquires another, he is without domicile, except the domicile of actual residence.

PETITION, to re-hear the cause as decided at the last (June) Term of this Court, and to vacate or modify the judgment then and therein rendered.

After argument the petition was dismissed with costs.

*Haywood* and *Smith & Strong,* for petitioner.
*Gatling,* contra.

READE, J. This case was fully and ably argued at last term, as it has been at this term, and the opinion of brother RODMAN for the Court, and the dissenting opinion of brother BYNUM, were exhaustive as to all the questions involved, as will clearly

appear by reference thereto. Nevertheless, the amount involved, the intricacy of the questions, the absence of the Chief Justice at last term, and the dissent of brother BYNUM, made it not inappropriate on the part of the plaintiff against whom our decision was, to ask a re-hearing at this term. It is, however, proper that we should repeat here what we said in *Watson* v. *Dodd* at this term, that unless we have clearly mistaken some important fact, or overlooked some express and weighty authority, we must adhere to our decisions. We consider every case with care, and decide nothing with a venture. And notwithstanding the adverse opinion of able, but anxious counsel, supported by the accommodating certificate of two amiable gentlemen whose investigation was probably superficial, that our decision " is plainly erroneous," it must be taken as conclusive, unless error appears plainly to *us.* We have again carefully considered the case, and we adhere to our decision as announced in the elaborate and learned opinion of brother RODMAN. And in this we now have the concurrence of the Chief Justice. It is from no disrespect to the able arguments with which we were favored, that we do not again elaborate our views; but because we cannot add to the force of what has been already said. I will however avail myself of the occasion to say, that I think too much was yielded to the plaintiff's case, when it was admitted that the husband's domicile at the time of the marriage was North Carolina. His domicile of origin was Perquimans county, North Carolina, and thence it is inferred that his domicile continued, until he acquired a new domicile. And doubtless that is the rule: but it is subject to exceptions, else one would not *abandon* one domicile until he had acquired another. Whereas it is well settled that one may abandon his domicile of origin, either with the design of acquiring no other; and then until he acquires another, he is without domicile, except the domicile of actual residence. Wharton, on the Conflict of Laws, sec. 78, has this head: " When a person may be without a domicile." " This, according to Savigny, may occur in the following instances: When a prior

domicile has been abandoned, and a new one is sought, but not yet determined on. When the business of life is travelling; *e. g.* agencies, &c., there being no home as a central point of interest." Then the only course is to assume residence to be domicile. And this, as it seems to me, is the case of Thomas Skinner. He abandoned, or left his domicile of origin in Perquimans county, North Carolina, with no declared purpose to return, and he never did return. That turned out to be, and it does not appear that it was not intended to be, a voluntary abandonment of his domicile. He went to New York, and was resident there three years, studying for the ministry, and without any declaration of domicile. And there he married; and executed the *ante*-nuptial contract, and had it perfected by registration there, according to the law of New York, *as if* it were to be performed *there ;* and did not have it registered in North Carolina, *as if* it were to be performed *here.* Now what can be inferred from this, other than that he had abandoned his domicile in North Carolina, and had accepted New York as his domicile—at least his domicile of residence, until: some other was determined on : to be influenced, no doubt, by what might be opened to him for the discharge of his ministe-- rial duties, which have the world for their field. This seems· to be precisely the case put by Wharton of a person without domicile, unless New York was his domicile. And this seems to have been confirmed by subsequent events ; for he fixed not his domicile in New York, nor yet in North Carolina, but followed the first call to his duty, and fixed his domicile in Virginia. This seems to me, to be so clearly the right view, that probably it would have been adopted, but for what was supposed to be the finding of Mr. Davis, the referee. He finds that Thomas Skinner left North Carolina, resided in New York three years, and married, but not with intent to remain. These are facts which we are not at liberty to dispute, and then he adds, " and he did not acquire a domicile in that State." This is not only fact, but law as well, and we are at liberty to question it. If he had abandoned his domicile in North Carolina,

as it seems he had, with the view of fixing his domicile wherever his duty might call him, he was without domicile until so called, except his domicile of residence, which was New York; so that the only domicile he had was New York, until his call to Virginia, and then he fixed his domicile there. And then Mr. Davis further says: "And not having such intent to remain in New York, it is found, as matter of law, that his domicile of origin prevailed and continued, and was his domicile at that time." This assumes that he could not lose his domicile in North Carolina until he had acquired one elsewhere, which we have shown to be erroneous. Suppose upon leaving North Carolina he had said, "I abandon North Carolina forever; and when he arrived in New York he had said, I have abandoned North Carolina forever, but still I do not intend to live in New York; I shall remain only until called to preach, and then I shall go where called. Would his domicile be North Carolina until he should be called? Unquestionably not. He would be without domicile, (Wharton,) except the domicile of residence, New York. If this be so, then the ante-nuptial contract, registered in New York, was perfect there. And the rights which it secured to Mrs. Skinner followed her every where. When her husband brought her to North Carolina, they followed her here. And then whatever she did or failed to do in North Carolina, of which the plaintiff complains, was protected by her disability of coverture. What if she had sold and conveyed by deed (without privy examination) her property and received a full price for the same, and used the money, the conveyance would have been absolutely of no effect, and surely there can be nothing more conclusive against her than that. I am inclined to think that her coverture would have protected her against omission to register the ante-nuptial contract in North Carolina, even if this had been the place of its contemplated performance. But this is more than I had intended to say, and more than I have authority from the Court to say. And the case stands upon our decision at last term. Plaintiff will pay costs.

PER CURIAM.                              Petition dismissed.