*T. D. MATTHEWS and others v. R. JOYCE and others.

*Infant Defendants—Process—Signing Judgment—Subrogation—
Judgment by Fraud—Bill of Review—Newly Discovered
Evidence.*

1. A judgment will not be vacated because some of a number of infant defendants united in interest, appeared only by a guardian *ad litem*, appointed without process previously served on such infants. (See C. C. P., § 59, for present practice.)

2. The act requiring the signature of a judge to authenticate his judgments and decrees is directory only, and such signature is not essential to their validity.

3. Where a surety, upon the conveyance of land by his principal to indemnify him against his contingent liabilities, substitutes his own note for that of his principal, the original liability remains undischarged, and the creditor is entitled to avail himself of the security, which he may enforce whether the surety is or is not damnified.

4. A successful plaintiff cannot be made to forego the advantages of his victory because his opponent, defending in a representative capacity

has fraudulently omitted to set up an available defense, if such failure was not the result of collusion with the plaintiff.

5. To entitle a party to the revision of a judgment on the ground of newly discovered evidence, the evidence must not be merely cumulative, nor such as ordinary diligence would have discovered in time for the first trial, nor then in the possession of the counsel or agent of the party.

6. Under the present practice it is not necessary to obtain leave of the court in order to bring an action in the nature of a bill of review.

(*Rollins* v. *Henry*, 78 N. C., 342; *Wiswall* v. *Potts*, 5 Jones Eq., 184; *Bank* v. *Jenkins*, 64 N. C., 719; *Harrison* v. *Styres*, 74 N. C., 290; *Love* v. *Blewit*, 1 Dev. & Bat. Eq., 108; *Greenlee* v. *McDowell*, 4 Ired. Eq., 481; *Bledsoe* v. *Nixon*, 69 N. C., 81, cited and approved.)

CIVIL ACTION in nature of a bill of review, heard at Spring Term, 1879, of ROCKINGHAM Superior Court, before Buxton, J.

The following are the facts set out in the plaintiff's complaint upon which rests their equity to a review and reversal of the impeached decree.

On March 17th, 1859, Ed. M. Matthews executed to the defendant, Walker R. Smith, a deed conveying his personal estate and a tract of land, described as containing four hundred and twelve acres, in trust to secure a debt of $1,000 due to William Dalton, his wife's father, and to indemnify him, as surety on several bonds, and among them one due to John Joyce, the testator of the defendant, Rea Joyce, in a sum represented to be "six hundred dollars more or less, the date of which is not remembered," and for the like indemnity of Thomas D. Price, as his surety upon another bond. Under the authority and directions of the deed, the land was exposed to sale in January, 1860, by the trustee, and bid off by John H. Price, at the sum of $8.10 per acre, and on the same day for the consideration of fifty dollars, he

---

* Ruffin, J., was of counsel and argued this case before his appointment as associate justice.

assigned his bid to said William Dalton for the benefit of said E. M. Matthews. No deed for the premises has been executed to the assignee, and the possession has continued in Matthews until his death, in 1863. At the time of the sale, Dalton owned a large estate and the effect of the small payment and transfer is alleged to be to make him a trustee for the former, and the transaction not intended to be, nor in fact was it a fraudulent arrangement to defeat or prejudice the rights of the creditors of either. Upon the death and intestacy of E. M. Matthews, the defendant, D. M. Matthews, became his administrator. The intestate left six infant children who with the husbands of such as have married, are plaintiffs in the action, and a widow, Elizabeth, who by proper proceedings in the late county court in April, 1867, caused her dower to be assigned and laid off in 102 acres of the said land. John Joyce died leaving a will in which the defendant Rea Joyce is appointed executor and he on December 13th, 1866, instituted in the court of equity of Rockingham, the proceeding which the plaintiffs in the present action impeach and ask to have reviewed and reversed, against the said Dalton, Smith, David Matthews (administrator of E. M. Matthews,) and a part of his children and heirs at law, setting the facts in reference to the making of the deed in trust and the sale of the land under it, and praying for a resale for the satisfaction of the secured indebtedness due to the testator: The children and heirs of the intestate upon some of whom, not named in the bill, no process was served, being infants, the court appointed the clerk and master guardian *ad litem* to all, and he accepting service for those omitted filed an answer in their behalf disclaiming knowledge of the truth of the allegations of the bill, and insisting on proof thereof, and placing their interests and rights under the protection of the court. The administrator made default and a decree *pro confesso* was entered as to him.

The remaining defendants, William Dalton, and Walker

R. Smith, answer jointly, admitting and explaining in detail many of the matters charged in the bill; and among others the defendant Dalton saying that he had substituted his own note (that claimed to be due the testator,) in the place of the one secured to which he was a surety, and had never paid the same in full, and that upon information believed to be correct, the intestate had discharged out of his own means the entire indebtedness provided for in the deed and that the full equitable estate in the land was revested in him and at his death descended to his heirs at law.

An order of reference was thereupon made by consent to John H. Dillard and Thomas Settle whose award when reported was to be acted on as of that term.  The award was made, among other things declaring the debt of $612.25 due the testator unpaid and secured in the deed, and the land liable therefor, subject to the dower estate attaching to part, and directing a sale and application of the proceeds to the payment of the note; and being confirmed it was decreed accordingly.  At the sale the land was bought for the sum of $400 by the said Rea Joyce, who in 1859, entered upon and has been since in continuous possession of the same outside of the limits of the part assigned for dower, claiming and using it as his own.

The right to relief against the interlocutory and final decrees in the suit in equity is maintained by the plaintiffs upon several grounds specified in their complaint.

1. The decrees rendered are not within the scope and equity of the bill, in that, the bill seeks to pursue and subject the equitable estate in fee as residing in Dalton to the payment of his substituted bond, while the decree recognizes the right of the widow of Matthews to dower therein, as if such estate was vested in her husband.

2. The substituted note of Dalton in discharge of that to which he was a surety (and his receiving payment from

his principal of that taken up) is a fulfillment of the trust declared for the surety and a complete indemnity to him.

3. The infants not served with process were not within the jurisdiction of the court, and no legal authority was possessed to appoint a guardian *ad litem* for them so as to bind them by the subsequent action of the court.

4. The payment of the secured debts by the intestate constitutes new matter discovered since the arrival at full age of the plaintiffs, of whom all but two have attained their majority.

To the complaint the defendant, Rea Joyce, for himself and in his representative capacity demurs and specifies as causes therefor the following:

1. That the subject matter of this action and the suit in equity is one and the same and the preceding adjudication is conclusive and a bar.

2. The decree was upon an award and in entire consistency with its terms, and the award not being impeached for fraud or otherwise, and being within the scope of the reference, is final both as to itself and the pursuant judgment.

3. The relief is in harmony with and warranted by the facts alleged in the bill.

4. The giving the single and individual bond of Dalton and taking up that to which he was a surety, did not extinguish the indebtedness represented in both, nor withdraw the security provided in the deed for the protection of the surety whose exoneration could be reached only by payment to the creditor.

5. The alleged new matter is not set up in the answers as a defence, which alleges only the discharge by the intestate of the debts secured other than that included in the award and decree.

6. There has been no leave obtained of the court to bring this action.

7. The averments in the complaint are indefinite and fail to show what the proposed evidence is, nor how and by whom to be proved, and it cannot be seen that, if true, the decree ought to be set aside.

At spring term, 1878, leave was granted the plaintiffs to amend, and thereupon they filed an amended complaint, reiterating what was alleged in the former, and further charging on information and belief that the intestate, Matthews, did, after the sale by Smith and the exchange of notes with Dalton, out of his own means pay all the secured debts inclusive of that transferred to and held by him, which information has come to some of the plaintiffs since attaining their majority, while it was fully known to the said David M. Matthews, the administrator, and he, as they allege, fraudulently concealed the fact from the referees and the court, and by his silence led both "into the erroneous and unjust determination arrived at." The further defence is relied on that the decrees are not accompanied with the signatures of the presiding judge, and without such authentication are inoperative and void.

To the amended complaint a demurrer was also interposed by the said Rea Joyce for himself, and as executor, with similar specification of defects, and assigning as to the newly discovered evidence that the answer in the equity cause alleges that all the trust debts had been paid by the intestate, except that to the testator, Joyce, and stating the facts attending the substitution of one for the other note, and the information was therefore before the court as well as the referees at the time of their action.

Upon the hearing of the issues made by the demurrer at spring term, 1879, the demurrer was sustained and the action dismissed, and from this judgment the plaintiffs appealed.

*Messrs. Mebane & Scott*, for plaintiffs.
*Mr. Thomas Ruffin*, for defendant.

SMITH, C. J., after stating the case. We propose then to consider the sufficiency of the grounds upon which relief is asked, to warrant a reversal of the proceedings in equity under which the land was sold and the funds arising from the sale appropriated to the debt due the testator.

1. The want of service upon some of the infant plaintiffs : While according to recent decisions jurisdiction over the person of infants is acquired only as in the other cases by the service of process on them, and then it is competent to appoint, in case there is no general guardian, a guardian *ad litem*, to act in their behalf and to protect their interests, so as to bind them by judicial action, a different practice has long and almost universally prevailed in this state, and this power of appointment has been generally exercised without the issue of process, for the reason that no practical benefit would result to the infant from such service on him, and the court always assumed to protect the interests of such party, and to this end committed them to the defence of this special guardian. To declare the legal proceeding void for want of such service upon a few of the class of whom the larger number with identical interests in the result have been regularly brought into court, would be to establish a rule subversive of much judicial action, unsettling titles dependent thereon, and introducing distrust and confusion in regard to the tenure of estates, the injurious consequences of which can hardly be foreseen or estimated, and we do not feel at liberty after so long delay to disturb the decree on this ground. We are supported in this by former adjudications as to the practice. In *Stillwell* v. *Blair*, 13 Sim., 399, there were several infant defendants in court, and for two who were absent the same guardian *ad litem* was appointed on proof of their being alive, and a similar course was pursued where one was ill, in *Hill* v. *Smith*, 1 Mad. Ch. Rep., 162; and again where one resided abroad. 19 Vesey, 357.

So, in *Bank of U. S.* v. *Ritchie*, 11 Curtis, 46, where a guar-

dian *ad litem* was appointed on motion of plaintiff's counsel for certain infant defendants, without bringing them into court by process, or issuing a commission for the purpose of making the appointment, Chief Justice MARSHALL declares that it is usual to call in to their defence by such appointment their "nearest relation not concerned in point of interest in the matter in question," yet there was no error in the action of the court. In the recent case of *Ins. Co.* v. *Bangs*, 103 U. S. Rep., 435, the supreme court distinguishes the several cases cited to show the regularity of an appointment of a guardian *ad litem* for non-resident defendants, so as to bind them by the decree in the cause, in that the suits related to property within the jurisdiction of the state courts, so holding, and over which they had control.

The practice, however, is regulated by statute, (C. C. P., §59,) and a previous service of process is required before the court can exercise the power of appointment.

2. The want of authentication by the signature of the judge to the decrees has never been held to affect their force where they were in fact rendered and filed among the papers, and even now under an act requiring such mode of authentition (acts 1868–'60, ch. 93, § 6), this is declared to be not essential to their efficacy as such. *Rollins* v. *Henry*, 78 N. C., 342.

3. The alleged discrepancy in the case made in the bill and that upon which the dower right is founded, as presented in the record, is not such as to authorize the interference demanded. The equitable estate was supposed to be vested in Dalton, but is shown to be in the intestate's heirs, to whom the right of dower was paramount, and this is so adjudged. The parties were all before the court, and whether the estate remained in Dalton or had revested in the intestate subject to the secured debt, it was equally liable to that debt, and no objection is made to the decree of sale which the facts charged fully warrant.

4. The substituted personal note of Dalton did not discharge the intestate's debt nor relieve the trust fund of the obligation to pay it, and the testator was entitled to have it applied to his own debt in exoneration of the surety from both. It is not alleged that the creditor knew of the additional security provided by the principal and intended to surrender all claim thereto. To deprive him of this security without his intelligent assent to the surrender, would be a fraud upon his rights and will not be upheld in a court of equity. He therefore retains that security, and the application of the land to his operates also to discharge the original obligation upon the equitable principle of subrogation. The indemnity furnished by the principal to his surety enures to the benefit of the creditor and as a security for his debt, (*Morrill* v. *Morrill*, 53 Vt.), which he may enforce whether the surety is or is not damnified. 1 Story Eq., § 499; *Wiswall* v. *Potts*, 5 Jones Eq., 184; *Bank* v. *Jenkins*, 64 N. C., 719; *Harrison* v. *Styres*, 74 N. C., 290.

5. The supplementary averment in the amended complaint of a fraudulent suppression by the administrator, Ed. M. Matthews, of facts known to him, and especially that his intestate had paid the very debt in suit, whereby the land was sold for a discharged demand then pressed, does not in our opinion justify the proposed interference. It is quite obvious that this matter was before the referees and passed on by them, and it is not charged or intimated that the omission to set up the defence, by whatsoever motive prompted, and whether available or not, if it had been, was in any way the result of collusion with the executor, or that the latter knew of or participated in the imputed fraudulent concealment. Unless he has, he cannot be deprived of the fruits of an adjudication reached in the *bona fide* prosecution of a claim believed to be due, because of the failure of an adversary party to make a successful resistance to the demand.

A decree or judgment equally as a deed procured by the practice of fraud by one upon the other may be annulled and set aside upon proof at the instance of the one who has suffered, and it is plain the present case does not fall within the rule.

A successful plaintiff cannot be made to lose the advantages of a favorable termination of his suit, because one or more of those who have antagonistic interests, have neglected to set up a defence, and sustain it by proof which might have been equally effectual and protective to all against whom the proceeding is directed. Were it otherwise, few suits would be determined by an adjudication, and the stimulus to make adequate preparation for resistance be greatly weakened and blunted. The policy of the law is expressed in the maxim, *interest reipublicæ ut finis sit litium.*

6. To entitle a party to a revision, on account of newly discovered evidence, the evidence must not be merely cumulative or additional to what was produced upon a point at issue, nor where by ordinary diligence it could have been discovered and used at the hearing, nor if in possession of the counsel or agent of the party. These requisites do not appear to have been met in the present application, and the knowledge was in one whose special duty it was to protect his intestate's estate from a false claim if he could do so· It is admitted in the answer of Dalton to whom the secured note was transferred, that the intestate had never paid the debt, and to him alone and the holder of the substituted note could payment be made, and this admission under oath comes from the grandfather of the plaintiffs, and as evidence, has a force which can scarcely be out-weighed by an averment based on information and belief that the intestate had made payment.

It was a point presented in the pleadings necessary to the relief demanded and assumed in the rendition of the award.

*Love* v. *Blewit,* 1 Dev. & Bat. Eq. 108; *Greenlee* v. *McDowell,* 4 Ired. Eq. 481.

We have not considered the objection taken in the demurrer to the want of previous leave to bring the action, a practice under the old system necessarily abrogated under the provisions of the new, and so declared in *Bledsoe* v. *Nixon,* 69 N. C., 81. The right to bring any proper action here rests with the plaintiff and the only conditions prescribed are those common to all suitors. C. C. P. § 71 *et seg.*

We must therefore sustain the demurrer and dismiss the action, and it is so adjudged.

No error. Action dismissed.