## SARAH A. DUPREE v. THE VIRGINIA HOME INSURANCE COMPANY.

*Petition to Rehear—Agent—Evidence—Newly discovered Evidence—Witness.*

1. A petition to rehear should not be presented, unless the Court has overlooked some material point, or some direct authority in the first opinion, and the rule is reiterated, that the Court will not, on petition to rehear, re-examine the same authorities and the same course of reasoning, in order to reverse their judgment.

2. Where the agent of two insurance companies sends an employee to examine and value property offered for insurance, and a policy is issued after such inspection by one of the companies, and after it has lapsed, another policy is

issued by such agent in the other company, but without any further examination; *Held*, that the fact that the property was examined by such employee, is competent evidence to go to the jury, on an issue of fraudulent over-valuation in an action on the second policy.

3. Where the defendant has closed his testimony, it is discretionary with the trial Judge to allow him to examine a witness to contradict matters brought out on cross-examination of the plaintiff's witnesses examined in rebuttal. It is only the evidence which is brought out by the plaintiff, and which the defendant has had no opportunity to rebut, that is open to refutation.

4. A new trial for newly discovered evidence will be granted only, when, (1) the newly discovered witness will probably testify as alleged; (2) when such evidence is material; (3) when it is probably true; (4) when the party has used due diligence in discovering it, and (5) when it is not merely cumulative.

5. The evidence alleged to be newly discovered, was known to one member of a firm, which firm were the agents of the applicant for a new trial, but he had retired from the firm before the action was begun. It was known to the other members of such firm that the retiring member was principally conversant with the transaction out of which the litigation arose, but they did not consult with him about it; *Held*, that the party had not used due diligence, and the application was refused.

( *Watson* v. *Dodd*, 72 N. C., 240; *Hicks* v. *Skinner*, 72 N. C., 1; *Devereux* v. *Devereux*, 81 N. C., 12; *Haywood* v. *Daves*, 81 N. C., 8; *State* v. *Lemon*, 92 N. C., 790; *Holmes* v. *Godwin*, 69 N. C., 467; *Shehan* v. *Malone*, 72 N. C., 59; *Bledsoe* v. *Nixon*, 69 N. C., 81; *Matthews* v. *Joyce*, 85 N. C., 258; *Carson* v. *Dellinger*, 90 N. C., 226; *Simmons* v. *Mann*, 92 N. C., 12, cited and approved).

This was a PETITION TO REHEAR, by the defendant, filed at the October Term, 1885, of the Supreme Court.

The case is reported in 92 N. C., 417.

The facts appear in the opinion.

*Messrs. Armistead Jones* and *A. M. Lewis & Son*, for the plaintiff.

*Messrs. D. G. Fowle* and *J. W. Hinsdale*, for the defendant.

SMITH, C. J. The argument upon the rehearing of the errors assigned, protracted over the entire period allowed by the rule, has been little more than the reproduction of that made upon the first hearing, which was full and exhaustive upon the numerous exceptions contained in the record, both orally and in the brief. With this aid, the case was then in all its details, carefully considered and decided. Our

convictions produced by that discussion, and our examination of the authorities, as embodied in the opinion then formed and delivered, remain unchanged. We do not feel called upon to go over the same ground a second time to sustain the conclusions then reached, but shall, notwithstanding they have been called in question and assailed with earnest confidence by counsel, leave their correctness to the vindication furnished in the opinion. To do this in the absence of any important overlooked case, adjudged in the Courts or contained in any recognized elementary work, or any shown misconception of the facts, at the instance of dissatisfied counsel, against whose client the decision is made, and whose zeal does not admit of the calm, dispassionate consideration that belongs to the judicial mind, would be to invite a needless revision of the rulings of the Court, and impair confidence in them. Nor are such contemplated in the rule, that, under limitations, allows an application for a rehearing of a decided cause. As was said with great force by the late eminent Chief Justice, delivering the opinion in *Watson* v. *Dodd*, 72 N. C., 240, and reiterated in subsequent cases: " No case ought to be reheard upon petition to rehear, unless it was decided *hastily*, and some *material point* was overlooked, or some *direct authority* was not called to the attention of the Court." *Hicks* v. *Skinner*, 72 N. C., 1; *Devereux* v. *Devereux*, 81 N. C., 12; *Haywood* v. *Daves*, *Ibid.*, 8.

While we are ready and willing to correct any error which may have been committed, and will do so when it is pointed out and made to appear, it is not in the contemplation or scope of the rule, to permit an adjudged case to be reviewed, and the rulings made therein controverted by the same course of reasoning and the reproduction of the same authorities, which were relied on in the former argument, and then, with due and careful deliberation, considered and disposed of.

We shall not, therefore, go over the entire ground covered by the present argument, and re-examine, as was done before, the nineteen enumerated errors set out in the defendant's petition,

many of which present the same substantial proposition in modified forms, but we will confine ourselves to the two most prominent, in what we have now to say. These objections are, first, to the admission in evidence of the report of the agent who made the examination, upon which the first insurance was effected; and second, to the refusal to allow the defendant to introduce witnesses to falsify the statement of the witness Dupree, elicited upon his cross-examination by the defendant.

1st. The report of the agent to the general agent of both insurance companies, Cameron, Hay & Co., sent out to inspect the premises.

Among the defences set up in opposition to the plaintiff's demand of indemnity for the loss occasioned by the fire, is an averment that the execution of the policy was superinduced by the false and fraudulent representation of the value of the property, made in the plaintiff's application for insurance, which, entering into, vitiates and avoid the contract. In meeting this imputation, the plaintiff was allowed to show that an employè, at the instance of the general agents, Cameron, Hay & Co., had made an examination and report of the premises the year before, upon which an insurance was effected in another company, they being agents of both principals, and that with this information, they issued the policy upon which the present action is founded. The agency firm consisted of three members, one of whom, particularly conversant with the transaction, retired before the present policy was issued. It was certainly competent to show this source of information possessed by the agency firm, in regard to the property included in both policies, when they issued the last, and as tending to rebut the charge that it was solely brought about by the fraudulent statements contained in the plaintiff's application. This agency may be understood, at least the evidence tending in this direction was proper to go before the jury, to have acted alike upon this information, as upon that furnished by the plaintiff, when each of the policies was issued.

We were referred to the case known as *The Distilled Spirits*, 11 Wall., 356, where it is supposed a contrary doctrine is main-

tained. So far from this, in our opinion, it sustains our view. Mr. Justice BRADLEY then says, " that in England, the doctrine now seems to be established, if the agent at the time of effecting a purchase, has knowledge of any prior lien, trust or fraud, affecting the property, *no matter where he acquired such knowledge,* his principal is affected thereby." He then adds : " On the whole, however, we think that the rule as finally settled by the English Courts, with the qualification above mentioned," (referring to information confidentially acquired, and which public policy does not permit to be disclosed) " is the *true one* and is deduced from the best consideration of the reason on which it is founded."

We have not undertaken to give any specific effect to the evidence, but only to declare that it was proper to be heard by the jury.

But it was urged that the trial Judge, in his charge, gave an unwarranted force to the evidence, in telling the jury that "the witness may be considered *as determining* the value of the other articles insured, but not as to the value of the merchandise"— which had not passed under his inspection.

This literal rendering of the words of the Judge, does not, most assuredly, convey his meaning as he must have been understood.

He evidently intended to say, and this is in harmony with what precedes, that the jury might consider this evidence *in determining* the value of that property. In the beginning of the sentence of which the words quoted are the conclusion, his words are: " In determining the value of the property insured, the jury may consider and give such weight as they deem proper, to the testimony offered, to show that the firm of Cameron, Hay & Co. were, during the years 1878 and 1879, agents both of the defendant company and the Virginia Fire and Marine Insurance Company that issued the policy offered in evidence, in July, 1878, and that an agent, acting under the direction of said firm, inspected and estimated the value of the storehouse and other articles insured in the policy sued on, at the prices set forth in the

16

policy issued in 1879, and made out the application," &c.   This language clearly shows that the Judge meant to leave, and was so understood, the force and effect of the evidence to the jury, untrammeled in acting upon it.

2nd.   The next assigned error is in the refusal of the Judge, the taking of the testimony on both sides being concluded, to allow the defendant to introduce a witness to contradict what had been sworn by P. C. Dupree, a witness for the plaintiff, upon his cross-examination by the defendant.   He had testified in opposition to the reproduced testimony of a deceased witness for the defendant, who had been examined at a former trial, that he never had any conversation with the plaintiff about the cost 'of her house.   In answer to a question from defendant, he stated that his own, and the testimony of the deceased witness at a former trial, were in conflict.   The proposal now was to show that there was no such conflict.   The Court refused to let the witness be examined, because the statement to be disproved, was not elicited by the plaintiff, but was in response to an inquiry from the defendant, and that the matter rested in the sound discretion of the Court.

The ruling was wholly misapprehended by defendant's counsel upon the first argument, as shown in his elaborate and carefully prepared brief.   The Court is represented as holding that the testimony being brought out on the cross-examination, the witness could not be impeached or contradicted, and again, that it was not within the discretion of the Court to allow the question, and the argument proceeds to combat these supposed rulings, and to show that " the conduct of the trial, and the order of proof, is always under the discretionary control of the Court."

The Court did not so rule, but held according to the well settled practice, the defendant having rested its case, had only a right to controvert by calling other witness what was brought out in the plaintiff's replying evidence, and to impeach the new witness who testified, and this because no previous opportunity to do this had been afforded.   The witness Dupree had been be-

fore examined, and his testimony was simply in conflict with that of the deceased witness.

It is an inaccurate statement of the ruling upon the exception. It was not held in general terms, as the argument assumes, that the testimony of Dupree was not open to disproof, for it undoubtedly was, during the orderly examination of the witnesses. The point decided is, that when both parties have been heard, and the defendant's witnesses have all been examined, only facts brought out in the plaintiff's reply to the evidence adduced by the defendant, are open to refutation, and not such as the cross-examination may elicit. Beyond this the application must be addressed to the discretion of the Judge, the refusal to exercise which is not a matter for review here. If it were otherwise, the plaintiff would have the right to call witnesses to sustain the witness, and thus a new and collateral issue would be opened up, and the trial indefinitely prolonged. Hence the rule is to be relaxed only, when in the opinion of the presiding Judge it was right and proper to do so. State v. Lemon, 92 N. C., 790.

In regard to this alleged error, the remark may be repeated that no overlooked material authority has been cited, and no aspect of the matter, before unnoticed, has been presented to us.

The entire reasoning of counsel has been directed against the conclusions before reached, and in controverting the principles of law there laid down. This is aside from the purview of the rule for rehearing, and if allowed, would tend to unsettle confidence in the adjudications of the Court as a final arbiter in disposing of controversies.

The facility with which our most carefully prepared adjudications and opinions are often pronounced erroneous in certificates of members of the bar, sustaining the application for a rehearing and review, has made it necessary to place further restrictions upon the practice, and render it what it was intended to be, a mode of correcting inadvertences, or propositions of law announced in ignorance of some important case, which, if known, would probably have changed the result. Rule 12, section 2.

After argument heard upon the second ground assigned in support of the application for a new trial, the discovery of new material evidence since the trial in the Superior Court, we resume the examination of this part of the case.

The witness from whom the testimony is expected to be obtained, J. J. Whitehead, the agent who received the plaintiff's application for insurance, on July 15th, 1878, and handed it to E. E. Gray, one of the partners in the general agency of Cameron, Hay & Co., with his endorsed approval, was first summoned for the plaintiff, but not examined on the first trial, and his attendance dispensed with at the last. His affidavit is, that he filled the blanks in the application at the plaintiff's dictation, was guided entirely by-her valuations and figures, and "that he did not *carefully* examine the buildings or the fixtures, or the stock of goods at all, or the furniture," embraced in the policy which issued in response, and when he delivered the application to Gray, "giving him no information whatever concerning the same, or the property described, or even of the fact that he had been in the house."

It appears that the other partners never had any conversation with him on the subject matter in controversy, nor was the retiring partner, Gray, conferred with in reference to the defence, while the application upon which he issued the policy for the firm remained in possession of the other partners, open to their observation until produced for the trial.

Certainly the failure to see and ascertain from the agent what information he possessed, and what aid his testimony might render to the defence, is not consistent with that diligence which ought to be exercised when the Court is asked to annul the trial, and take away the results secured by the successful issue to the plaintiff.

It is not necessary to go outside the adjudications in this State to determine the conditions requisite to the interference of the Court in cases of this kind.

The considerations that should enter into the determination of the Court on such an application, are thus set out by RODMAN, J., in *Holmes* v. *Godwin*, 69 N. C., 467:

" 1. Will the newly discovered witness testify as alleged?

" 2. Is the new evidence material?

" 3. Is it probably true?

" 4. Has the party used due diligence in discovering it? to which may be added, is it independent, or cumulative, merely?

Without commenting on the other indispensable conditions, has the applicant used diligence in finding out the witness, and what he will prove? Unless this appears, the motion will be refused in the Court when the jury trial was had. But a more stringent rule ought to be applied to an application made in this, the appellate court. It is said by READE, J., in delivering the opinion in *Shehan* v. *Malone*, 72 N. C., 59, where, as in *Bledsoe* v. *Nixon*, 69 N. C., 81, the application upon such ground was first made in this Court: " There is but one precedent for a motion in this Court, after judgment here, to set aside the judgment here, and grant a new trial in the Court below for newly discovered testimony, and that is the case of *Bledsoe* v. *Nixon*, *supra*. The necessity for it seems to arise out of our new system. It is an inconvenient practice and not to be encouraged; nor will it be allowed, *except in cases of necessity, to prevent manifest injustice.*"

Without a discussion of the cases, we refer to *Matthews* v. *Joyce*, 85 N. C., 258; *Carson* v. *Dillenger*, 90 N. C., 226, and *Simmons* v. *Mann*, 92 N. C., 12, the last judicial utterance on the subject.

There have been two jury trials of this cause in the Superior Court, two hearings upon the appeal, inclusive of the present rehearing, and now we are asked to re-open the cause, and send it down for a new trial before the jury, for the only assigned reason that the defendant's agents never conversed with the witness most likely to give information about the manner of effecting the first insurance, and never knew the value and importance of his

testimony until since the last trial in the Superior Court. Under such circumstances, we do not feel warranted in unsettling what has been done, and we adhere to that most salutary maxim : *"Interest reipublicæ ut sit finis litium,"*—it is full time for this litigation to come to an end—and the judgment must stand.

No error. Affirmed.