O. C. FARRAR et al. v. H. L. STATON.

*Jurisdiction—Action to Impeach and Review Judgments—Fraud —Petition to Rehear—Supreme Court—Constitution—Bill of Review.*

1. Under the Constitution of the State the jurisdiction of the Supreme Court to review and revise its final judgments is confined to the power to rehear, as regulated by the statute—*The Code,* § 966; Rule 12—and to relieve a party from a judgment rendered against him by his mistake, excusable neglect, or surprise. *The Code,* § 274.

2. After the expiration of the time within which those remedies may be invoked, a final adjudication in matters formerly cognizable in equity, in the Supreme Court, can only be reviewed by a new action, in the nature of a bill of review, impeaching the judgment for fraud, or other sufficient cause, instituted in the Superior Court.

3. An action, in the nature of a bill of review, can only be maintained upon three grounds: 1. For error apparent on the face of the decree; 2. for new matter discovered since the decree was rendered; and 3, for fraud.

4. In such an action it is not competent to look into the evidence to ascertain if any fact was misconceived, or that the decree was based on an erroneous statement of facts.

This is a CIVIL ACTION which was tried by *Graves, J.,* a trial by jury having been waived, at Spring Term, 1888, of EDGECOMBE Superior Court.

There was judgment for the defendant, from which the plaintiffs appealed.

The facts are stated in the opinion.

*Messrs. George Howard* and *George V. Strong,* for the plaintiffs.

*Mr. John Devereux, Jr.,* for the defendant.

SMITH, C. J.   At Spring Term, 1887, of this Court, the subject-matter in controversy in this action, and between the same parties, in a reversed relation, involving the contested right to the surplus proceeds of the cotton crop conveyed in the first mortgage after satisfying the secured debt, was considered and decided.   The decision then made was reconsidered upon an application to re-hear, and, at the term next succeeding, affirmed. *Weathersbee* v. *Farrar*, 97 N. C., 106; 98 N. C., 255.

The ruling by which the excess was given to the second mortgage was based upon the finding of the referee, to which no exception was shown in the record to have been taken, that the crop was conveyed in both mortgages, and the proceeds of the sale by the prior mortgagee being more than sufficient to pay the secured indebtedness, it was held that the excess belonged to the second mortgage, and would not be diminished by advances made to aid in the cultivation and preparing of the crop for market, in the absence of any lien perfected under the provisions of the statute.   *The Code*, § 1782.

The ruling in the Court below, while there made irrespective of the presence of the crop in the second mortgage and upon equitable grounds, was affirmed upon both hearings in this Court, so that there have been three concurring adjudications upon the conflicting claims to the fund.   The facts are fully reported, and the reasons given in support of the conclusion reached set out in the cases, so that it is unnecessary to repeat them here.

The present suit is brought for a revisal of the judgment thus deliberately rendered upon the record then before us, and which now, as we understand from the argument, is admitted to be consistent with the ruling upon the ground that the crop, notwithstanding the referee's finding, was not included in the enumeration of the property assigned in the posterior mortgage, and that it was so understood and acted·

on in the Court below, both by counsel and the Judge; and upon the trial of this action in the Court below, the Judge, by consent, finds as follows:

"This cause coming on to be heard, a jury trial being expressly waived, upon the pleadings, the affidavit of Judge Shepherd and the papers in the original cause, and the same being heard, his Honor finds, in addition to the facts admitted on the pleadings, the following facts:

1. That the referee made his report in the original suit to the Fall Term, 1884, of Edgecombe Superior Court. At said term, on affidavits filed, the defendants in that suit moved to set aside said report and remove the referee, which motion was continued to Spring Term, 1885, at which time it was heard and denied.

2. At Spring Term, 1885, motion was made by the defendant in said suit for leave to amend his answer, and by consent, said motion was continued until Spring Term, 1886.

3. That at Spring Term, 1886, on the trial before Judge Shepherd, from whose judgment the original suit was carried by appeal to the Supreme Court, the motion for leave to amend was again asked; that it was conceded that Mrs. Weathersbee's mortgage did not cover the crop, and that the Judge tried the case on that theory; that in giving judgment the Judge struck from the account, as allowed by referee, the cotton and cotton seed sold at the sale, because he desired to find the proceeds of the sale of the personal property included in mortgage, as distinguished from the crop; that the case was decided by him, upon no misapprehension as to whether the crop was covered by Mrs. Weathersbee's mortgage, but entirely upon the idea that it was not, that no amendment was actually made.

4. That cotton and cotton seed which were sold (for $446) at the sale and charged against plaintiff in the account of the referee, were part of the crop in controversy, contained in O. C. Farrar's mortgage, and that in the testimony

there was no evidence of any other crop or that the crop was in Mrs. Weathersbee's mortgage.

5. That before the case was called in the Supreme Court, by consent of counsel, the motion for leave to amend, therein set forth was marked " allowed."

6. That the mistake was made by plaintiff of supposing that the record as sent up and amended in Supreme Court, showed that the case was tried by Judge Shepherd, on the concession that Mrs. Weathersbee's mortgage did not cover the crop.

7. That on the 29th June, 1886, Mrs. Weathersbee assigned for value her interest to L. L. Staton, who has been made a party to this suit.

It appearing that L. L. Staton, has purchased and had assigned to him the interest of Sallie F. Weathersbee, in this action, on motion it is ordered that he be made a defendant in this case ; and now upon consideration of the foregoing findings of fact and all the matters above set out, it is adjudged that the defendant go without day and recover of the plaintiff his cost to be taxed by the Clerk and that the plaintiffs take nothing by their action."

The action now prosecuted seeks to have the judgment reversed, not for that it is erroneous, pronounced upon the facts ascertained and reported, and as contained in the record, but because in the Court below it was tried upon the general understanding that the crop was not, and in fact it was not, conveyed in the second mortgage, and that the ruling was upon this basis, in which there was error, while, by inadvertence, the case on appeal upon which the decision was made in this Court states that the crop was embraced in the second subject to the first mortgage deed.

The first suggestion that occurs to us is the novelty of this mode of procedure to rectify an error after successive *final* adjudications, and the absence of any precedents referred to

101—6

or found by us to sanction the procedure, either in our own or other Courts.

At law and under our former system the final judgment, except by writ of error sued, concluded the cause and after the term was irreversible. In equity the cause could be re-heard before the enrolment of the final decree upon the decree itself, or upon any intermediate orders, when an application was made in apt time, and could after enrollment be reconsidered upon a bill of review. In this State the ruling in a Court of Law or in a Court of Equity was reviewable by appeal substituted in place of the other remedy. But the distinction between final decrees based upon the enrolment has been obliterated and the form of procedure for a reviewal is the same.

As the appellate court and its jurisdiction were formerly the creature of the statute, it was held in the *American Bible Society* v. *Hollister*, 1 Jo. Eq., 10, that the Supreme Court could not entertain an original bill to review one of its own final decrees, and that such a procedure was admissable only in the Court of Equity of the county. But such jurisdiction, authorizing the the re-hearing of its own decrees upon a proceeding begun within five years after they have been entered, has been conferred upon the Supreme Court by an act of the Legislature, and was exercised up to the recent constitutional changes. Rev. Stat., ch. 32, § 17.

The present Court derives its jurisdiction from the constitution, and combining in one the functions of both Courts, by its rules and the statute, may now review and correct any errors found to be in its final judgment, upon an application to re-hear made within twenty days of the next term following the rendition, as it may also upon newly discovered evidence. *The Code*, 966; Rule 12 in 92 N. C. Rep., 849.

Besides this power of correction of its own errors after the determination of the cause, it is also invested with the authority conferred upon the Superior Court by *The Code*, § 274,

to relieve a party from a judgment taken against him through his *mistake, inadvertence, surprise or excusable* neglect. *Wade* v. *Newbern,* 73 N. C., 318; *Horne* v. *Horne,* 75 N. C., 101.

These seem to indicate the extent and the limitations put upon the exercise of the power to interfere with the final adjudications of this Court after the expiration of the time when they are rendered, except by a new action impeaching the judgment for fraud or other sufficient cause, and this must originate in the Superior Court, even when the final determination is in this Court, as decided in *Kincaid* v. *Conley,* Phil. Eq., 270. We do not of course refer to amendments and the correction of irregularities in the proceedings for the making of which no definite limits of time are fixed As the suit first instituted was one appertaining to matters cognizable in the Court of Equity in the former system of divided jurisdiction, we must look into its rules and practice to see how far, and under what circumstances, interference with its final decrees was allowed for errors committed in rendering them, and whether any support is given to the present proceeding.

" After a decree has been enrolled," it is said in 2 Dan. Ch. Prac., 1232, "it can only be altered on a bill of review or by an appeal to the House of Lords."

And so Mr. Justice Story remarks " There are but two cases in which a bill of review is permitted to be brought and these two cases are settled and declared by the first of the ordinances in chancery of Lord Chancellor Bacon respecting bills of review, which ordinances have never been departed from." Story Eq. Pl., § 404.

These two cases are stated to be for the correction of " error in law appearing upon the face of the decree," § 405, and " that you cannot look into the evidence in the case in

order to show the decree to be erroneous in its *statement of fact,*" and this is declared to be "*established doctrine.*" Sec. 407.

The second case is "upon the discovery of new matter, such for example as the discovery of a release or receipt which would change the merits of the claim upon which the decree was founded." He adds that leave to file the bill of review for this cause will not be granted without an affidavit "that the new matter could not be produced or used by the party claiming the benefit of it in the original cause." Sec. 412.

The same general exposition of the rule in reference to bills of review is found in Metf. Ch. Pl., 78 and 79, in 2 Mad. Ch. Pr., 539, and in other authorities, as well as the decisions of our own Court.

"A fact misunderstood," says the second author, cited at page 539, "and not introduced into the decree, may be a ground for an appeal *but not for a bill of review.*"

"The only two grounds upon which a bill of review can be entertained," remarks C. J. Taylor, "are 1st, for error apparent on the face of the decree, 2d, for new matter discovered since." *Simms* v. *Thompson,* 1 Dev. Eq., 197. To same effect are *Barnes* v. *Dickinson,* Id. 326, and other cases.

It is equally well settled that a decree may be impeached and annulled for *fraud* which vitiates whatever it enters into in the transactions and dealings of men with each other.

A bill for this purpose, original, yet in the nature of a bill of review, will be entertained when the decree has been obtained by fraud or imposition, "for these will infect judgments at law and decrees of all Courts; but they annul the whole in the consideration of Courts of Equity." Story Eq. Pl., § 426; *Kincaid* v. *Conley, supra.*

Mr. Story mentions no other grounds, except that arising out of a fraud practiced in procuring a decree by imposition or other means, nor have the researches of counsel, nor our own,

discovered any case of recognized authority to warrant the impeachment of a final decree upon other grounds. It would very much impair confidence in the integrity of judicial proceedings if the sanctity of the judgments of its Courts could be reviewed upon other grounds.

The present action springs from no such imputation, for it does not appear, nor is it alleged, that any fraud or imposition was practiced, or that the Court labored under any misapprehension of the facts set out in the record in arriving at a determination of the cause, or that the ruling, based upon such facts, is erroneous. The appeal was argued and decided upon these facts, and not upon the evidence, for the parties consented to the reference and to the conferring upon the referee the power which he exercised. The difficulty grows out of the failure of the appellant to place before the Court the case as decided below, the ruling in which is affirmed, and if a reformation under these circumstances, or a reformation of the judgment were tolerated, the great maxim so conducive to peace and so long recognized, *interest rei publicae ut sit finis litium*, would be practically abrogated, and controversies would have no certain ending. This maxim is recognized in many of our own adjudications. *Teague* v. *Perry*, 64 N. C., 39; *Peebles* v. *Horton*, Ib., 374; *Atkinson* v. *Cox*, Ib., 576; *Bledsoe* v. *Nixon*, 69 N. C., 81.

It is no answer to this to say that there should be a remedy for every wrong or erroneous decision, for it devolves upon parties to the litigation to see to it that the wrong or error is not committed, and this at the proper time. There is no remedy for the results of a want of care and attention bestowed upon the case at the hearing, except as provided in the statute, when it comes from excusable negligence, and then the relief is in the discretion of the Court, and this is not a case of the kind, nor is the relief asked in the mode pointed out. The appellants seek to review a decree rendered after full argument, and re-heard and affirmed upon

the sole ground of a false statement of a fact found by the referee and not excepted to, and we are asked to go behind that finding and review it upon evidence which, though sent up, was not properly before us at the hearing, and of which both parties had the full knowledge furnished by the record.

The absence of any case sustaining the application tends strongly to prove it has no foundation in the law and practice of the Courts, and is an innovation.

We, therefore, affirm the judgment rendered in the Court below.                                                        Affirmed.