[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 255 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 256 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 257 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 258 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 259 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 260 
The application and conditions of insurance were, by apt words, made a part of the contract. If, therefore, the application is to be treated as the application of the plaintiff, and it contained an express warranty that there was no incumbrance on the insured property; or if there were prior insurances, not noted in the application or endorsed on the policy, or otherwise approved in writing by the secretary, the policy cannot be enforced, unless there has been a waiver, or the defendants are estopped from claiming that the contract was void ab initio. The application, however, must be that of the plaintiff, and so construed, or this branch of the defence fails. Though the conditions of insurance provided that all applications should be in writing, according to the printed forms of the company, specifying incumbrances and the amount of prior insurance, if any, and the application is to be deemed part and portion of the policy, whether signed by the insured or not, yet it cannot be doubted that a formal application in writing might be dispensed with, or waived by the company, and a policy issued or renewed without any survey or written application on the part of the assured; or the company's agent might make the survey and fill out the application, in such case acting as the defendants' and not the plaintiff's agent. It is to be observed, that neither in the policy in this case, nor in the conditions of insurance, was it provided *Page 261 
that in making the survey and application, or in filling up the blank forms provided by the company, the agent of the defendants, to effect insurances, was to be regarded and treated as the agent of the assured.
The first ground assumed on the motion for a nonsuit was, that there were prior insurances on the property, not noted in the application or in any way approved of by the secretary of the company. This ground was abandoned on the argument, and very properly, as, conceding the application to be the plaintiff's, and that he thereby expressly wrrranted against prior insurances, it was frivolous. The policy was to be void only in the event of an omission to notify the defendants of prior insurances, and this notice might be given in writing on the application or policy. It was only in the case of prior insurance, not noted on the application or endorsed on the policy, or otherwise approved in writing by the secretary, that the policy was to be void. In this case the prior insurances were stated in express terms in the body of the policy. This was a sufficient compliance with the condition. It was the act of the company itself, and they were notified substantially in the mode prescribed. But if the insertion, by the agent, of the prior insurances in the body of the policy was not strictly an endorsement within the language of the condition, this was waived, and the defendants, having noted them on the face of the instrument, are estopped from making the objection that they were not endorsed thereon or noted on the application. The noting of a prior insurance, by the company's agent, on the face, instead of the back, of the policy, cannot have the effect to avoid the contract.
Another ground urged was, that there was an incumbrance on the property not stated or set forth in the application. It is assumed here that the application was made by the plaintiff; that it was a part of the contract; that he agreed or warranted that the property was unincumbered; that there was a breach of warranty on his part, and, as a consequence, *Page 262 
the policy never took effect. This point was not distinctly made on the motion for a nonsuit, for the fact was not alluded to that the application failed to state or set forth the incumbrance. The point then urged was that the policy was void, for the reason that the City Bank mortgage existed on the property, and not because, when inquired of as to incumbrances, the plaintiff had omitted to state, either through mistake or design, the amount of incumbrance on the building proposed to be insured. As the objection is of the most technical kind, I am not sure that the defendants ought not to be met by one of an equally technical character, viz., that they omitted on the trial to distinctly and specifically direct the mind of the judge to the point now raised. But as the general ground was assumed, that on the whole case the plaintiff was not entitled to recover, let me briefly inquire whether, under the proof, the omission by the defendants' agent to fill up the blank respecting incumbrances in the printed form of application, which he transmitted to the company's office, unknown to the plaintiff, as a memorandum of what he had done, in law avoided the contract of insurance; and, if so (the defendants, having verbal notice of the incumbrance, received the premium and issued the policy), whether they can take the objection that the policy is bad because the notice was not written. The supreme court held that the policy in question was issued without a written application on the part of the plaintiff; that the agent filled up the printed form of application, and sent it to the company as a private memorandum, taking the place of the written application required by the conditions of insurance; that the act of the agent, waiving a formal application on the part of the plaintiff, was approved and acceded to by the company, they having received the unsigned memorandum of the agent without signifying their disapproval, and adopted his act; and that consequently the application given in evidence could not be referred to as containing any *Page 263 
warranty on the part of the plaintiff in regard to incumbrances. If this be so, it would dispose of the question of any breach of warranty on the part of the plaintiff. Waiving an application by the plaintiff in the particular instance, and not inquiring of him as to incumbrances, there could be no warranty on his part that none existed on the property. I am disposed to agree with the supreme court, that the imperfect application transmitted by the agent to the defendant is not to be treated as an act of the plaintiff; but that the defendants chose to insure his building without any express representations or warranty on his part respecting incumbrances. But conceding the application technically to be the plaintiff's, and that he is responsible for all it contained, or omitted to contain, should the defendants be heard now to object that they had not written notice of the incumbrance? for this is all there is of the point. Maltbie, as the defendants' agent, issued the three policies of 1851, 1852 and 1853, being duly authorized so to do. The defendants were responsible for all his official acts. The policy of 1853 was asked for as a renewal policy. The application for it said there was no incumbrance on the property "excepting * * and the property the same in all respects." The first policy had been issued by the agent with verbal notice from the plaintiff of the City Bank mortgage, and he issued the one in suit as a renewal policy, with full knowledge of such mortgage, the property remaining in the same condition as when first insured. The defendants took the premium for insuring the plaintiff, and issued the policy, well knowing that there had been verbal notice, but none in writing. Honesty and good faith demand that they should not be allowed to make the objection now, that, though verbally notified of the incumbrance, for want of a written notice the policy is bad. They waived the necessity of such written notice, and, to prevent fraud and iujustice, are estopped from making the objection. They took the plaintiff's money, and issued a policy to him upon verbal *Page 264 
notice of the incumbrance, though their conditions of insurance required the notice to be in writing. They affirmed the policy to be valid without written notice and the plaintiff acted upon such affirmation, and paid the consideration for insurance. The defendants ought not to be permitted to gainsay their acts when the effect would be to defraud the other contracting party.
A third ground was, that there could be no recovery, for the reason that the action was not commenced within six months next after the loss occurred. The fire was on the 5th July, and the six months expired the 5th of the January following. It was undoubtedly competent for the parties to stipulate that the action should be barred unless commenced within a stated period, and it was equally competent for the defendants to waive the stipulation. So, also, if the conduct of the defendants was such as to induce the plaintiff to suppose that it was not intended to insist upon, but to waive the condition, and by the act of the company itself he was prevented from bringing his suit until after the expiration of six months, there would be no bar. It was not in all cases that the action was to be barred unless commenced within six months after the loss. By a prior condition to the one in question, the proofs of loss were to be delivered to the secretary within thirty days after the fire. Losses were due and payable at the secretary's office in ninety days after due proofs of loss, amended and completed, had been filed in his office, in compliance with the terms and conditions of insurance. The company could wait the six months, and then interpose objections to the proofs, and upon such objections being obviated, and the amended or completed proofs filed, have ninety days thereafter to pay the loss. In such case clearly there would be no bar. If the insured commenced his suit, under the twelfth condition, within six months after the loss, the company might defend themselves on the ground that it was prematurely brought, losses not being due and payable *Page 265 
by the ninth condition, until ninety days after filing the amended proofs in the secretary's office. It seems quite obvious that the twelfth condition only contemplated a case where the proofs of loss were originally complete and filed without objection, and the insured delayed bringing his suit, not only for the ninety days after such filing (which he was bound to do), but for an indefinite period afterwards. The object in view was to effect a speedy settlement of claims against the company. The defendants were to have ninety days to pay the loss, after the completion and filing of the proofs, but if they chose for any reason to defend, then the action was to be brought within a limited time after neglect or refusal to pay, or be barred. The defendants had it in their power, by objecting to the proofs of loss, and neglecting or refusing to file them, to extend the time, in which they were required to pay, beyond the period of six months after the occurrence of the loss; and in such case clearly it could not be pretended that the insured had stipulated away his right of action, but the defendants would be deemed to have waived the twelfth condition. In this case the proofs of loss were delivered to the defendants some nine days after the fire. They were retained, without objection, eighty-five days, or within five days of the time when the loss was due and payable by the ninth condition. It was then first suggested by the secretary that the proofs were incomplete, in not setting forth, as required, whether or not the insured property was incumbered. Seven days thereafter, and on the 14th October, the plaintiff transmitted an affidavit to the company, supplying the alleged defect. No further objection was heard from the defendants; but they had secured all that was probably desired, an extension of the time to pay the loss for ninety days from the 14th October, and put it out of the power of the plaintiff to successfully maintain an action commenced within six months after the loss occurred. The six months would have expired on the 5th January, 1854, whilst the loss was *Page 266 
not due and payable by the ninth condition, nor could the company be compelled to pay, until after the 12th January. Thus things remained until the 2d January. (within three days of the expiration of six months after the loss), when the secretary was asked when the defendants would pay the plaintiff his loss. The inquiry was made to the president and secretary, in the office of the company, and the secretary replied, when it was due — that the plaintiff would then get his pay, and might be so informed. The time when due, as stated in the office, was the 14th January, and it was then the company promised that payment should be made. The plaintiff was notified that the company would rely upon the ninth condition. No intimation was given that, unless action was brought within three days afterwards, they would avail themselves of the bar prescribed in the twelfth condition. Indeed, the acts and promise of the officers of the company were directly calculated to lull the plaintiff into inactivity, and to assure him that if he would forbear suing until the 14th January, his money should be promptly forthcoming. He was told, in effect, that the defendants would insist on the terms of the ninth condition, as to the time when the loss was due and payable, and that if he commenced an action to save the bar prescribed by the twelfth condition, they should interpose the defence that, by the contract, the insurance money was not yet due and payable. It cannot be doubted, under the proof in the case, that the defendants intended to and did waive the limitation stipulated by the twelfth condition.
One of the conditions provided that the assured should not be entitled to demand or recover any more than two-thirds of the cash value of any building (exclusive of the cellar), nor any larger sum than should, together with all other insurance thereon, amount to a sum equal to two-thirds of the cash value of the insured property. The evidence showed that the plaintiff had iusurance on the *Page 267 
building in other companies than the defendants', to the amount of $6000. In the proofs of loss, the cash value of the building was stated at $22,000. The defendants, on the trial, admitted that it was worth $8000. The point now made is, that the evidence showed the value of the building destroyed to be but $8000, and as the plaintiff had insured in other companies the sum of $6000, being more than two-thirds of its cash value, he was not entitled to a verdict against the defendants for any amount whatever. This proposition was neither put forth on the trial or at the bar of the supreme court, and being untenable in law, and resting on no foundation of fact, should have been omitted here. It is a sufficient answer that the proof did not conclusively fix the cash value of the building destroyed at but $8000. The defendants' agent had, but the year previously, in the memorandum which he forwarded to the defendant, estimated it at almost double that sum.
The judgment of the supreme court must be affirmed.
Judgment accordingly.