## SUPREME COURT.

### JOSEPH RIPLEY agt. THE ASTOR INSURANCE COMPANY.

Where there is a stipulation in a policy of insurance requiring the insured to sue, if at all, in twelve months, it operates as a forfeiture, and will be construed strictly. Slight evidence of waiver will be sufficient to defeat its application.

Where a mortgagor takes a policy of insurance in his own name, with the customary clause: "Loss, if any, payable to A. B., mortgagee," A. B. only in such a case (the mortgage being unsatisfied) can maintain an action for the insurance; the mortgagor cannot assign the claim to another, so that the assignee can sustain an action upon a loss under the policy. And this rule applies to any party who, under a stipulation in a policy taken by him, makes the loss payable to another.

*New-York General Term, May, 1859.*

*Present, Justices* ROOSEVELT, CLERKE *and* PRATT.

Ripley agt. Astor Insurance Company.

By the court—ROOSEVELT, Justice. This court at general term having decided that a stipulation, requiring the insured to sue, if at all, in twelve months, although binding originally, may be waived by the language or conduct of the parties; and the jury on the second trial having found that in the present instance there was such waiver, we are now to inquire whether that finding and the rulings which led to it were warranted by the law and the testimony. A twelve months' statute of limitations, although assented to by the parties, operates as a forfeiture. It is, therefore, to be construed strictly. Slight evidence of waiver, as in other cases of forfeiture,·will be sufficient to defeat its application. "A positive act of the defendants, intended to induce postponement," is not necessary. Silence on the subject, in the midst of negotiations for settlement during the year, however intended, was held by the general term to be competent evidence to go to the jury, and, if competent, its weight was to be determined by them. The court, especially to aid a forfeiture, and a very harsh one, too, will not scrutinize very closely their verdict on such a point : nor, I may add, the rulings of the judge at the trial, unless very clearly erroneous. Dismissing, then, the question of the twelve months instead of six years limitation, which was in effect disposed of in the order directing the second trial, I shall proceed to consider the case on its merits.

It is contended by the insurance company that by a stipulation in the policy the insured were to keep a watchman in the mill every night; that the loss sued for occurred in the night time; that there was no watchman on the premises when it occurred, and as a consequence that the company are not bound to indemnify. The fire, it is conceded, took place on the morning of the 8th of April, 1849, between three and four o'clock, and of course in the night time. It was, however, a sunday ; and the sabbath, it is contended by express terms, as well as by custom, was excepted from the stipulation—a position which, as it seems to me on both grounds, is well taken. The policy was based on a written survey in the form of question and answer. To the question whether the mill

was left alone at any time after the watchman goes off duty in the morning, the parties answered: " Only at meal times, and on the sabbath and other days when the mill does not run." Literally construed, this language perhaps imports that the watchman, although off duty on the sabbath, was only so during the same hours as on other days—a construction which, it is supposed, is confirmed by the answer to another interrogatory, in which the parties, when asked whether there is a watchman in the mill during the night, respond, without exception, "there is a watchman nights." Now, it seems to me, that as the par- ties had the idea of the sabbath in their minds, and as all the interrogatories were written down and all together read over before any one was answered, if it had been intended that any portion of the sabbath was to be violated by service labor, the expression used, instead of being merely " nights," would have been " every night," or perhaps still stronger, " every night, sundays included." Suppose, speaking of a pre-emi- nently industrious mechanic, or even professional man, one should say that he worked hard o' nights, would any person understand that the expression was intended to convey the idea that he worked after 12 P. M. on saturday, and before 12 P. M. on sunday? All language, be it ever so general, has its implied limitations—and even the man who is "forever at work " rests some portion of the twenty-four hours, and some one day of the seven. If, then, he who is "forever at work " rests on sundays, and before daylight as well as after, he who works " of nights " must certainly be regarded as hav- ing the same privilege.

As to so much of the loss as arose from the destruction of the "stock," the indemnity by the express terms of the policy was payable, not to the mill owners, but to Sheldon & Co., the owners of the stock. The mill owners, therefore, even if they desired to do so, could not assign the claim to the plaintiff. They occupied the same position in that respect as mort- gagors, taking a policy in their own name, but with the cus- tomary clause: " Loss, if any, payable to A. B., mortgagee." A. B., and A. B. only, in such case—the mortgage being

unsatisfied—could maintain the action. Sheldon & Co., so far as respects the stock, were not only the sole parties in interest, but the sole parties to whom the insurers, in case of loss, had, as we have seen by the terms of the policy, contracted to pay. A new trial must, therefore, be granted unless the' plaintiff waives that portion of the damages found by the jury which is applicable solely to the stock. If that be waived, judgment for the balance should be entered for the plaintiff.