| 66 | 363 |
|----|-----|
| 80 | 690 |

---

THE STATE OF TEXAS V. THE STONE CATTLE AND PASTURE CO.

(Case No. 5731.)

1. VENUE—ACTS OF 1883, CHAPTERS 88 AND 104, CONSTRUED—FRAUD—LIMITATION—POSSESSION—NOTICE—The state instituted suit to recover of defendant, certain lands alleged to have been purchased under chapter 88 of the acts of 1883, and in violation of section 6. The petition averred that defendant, though prohibited by the act from purchasing more than one section in any one county, had fraudulently acquired title to more than one section in each of several counties, but in the names of various persons, thus concealing the fraud. It appeared in the petition that the suit was brought more than one year after the sales were made. *Held:*

(1) The venue for suits of this character is regulated by art. 1198, R. S. Chapter 104 of the laws of 1883, has reference only to suits for land fraudulently purchased under the acts of 1879 and 1881.

(2) The fact that defendant entered upon possession immediately after the purchase, was not notice of the fraud, but a circumstance to be considered in determining whether proper diligence was used to discover the fraud within a year after it was perpetrated.

(3) In the act of 1883 it was intended by the phrase, " the fraud may be shown and the scales cancelled," to authorize a suit in a court of competent jurisdiction to cancel the sales on the ground of fraud. The limitation of one year must be construed *as a limitation upon the commencement of suits, and not as* prescribing a period within which the suits must be ended.

(4) The provision that suit shall be brought " within one year from the date of sale," means no more and no less than if the provision were for suit within one year from the date of the accrual of the cause of action.

ERROR from Archer.    Tried below before the Hon. B. F. Williams.
The opinion states the case.

*John D. Templeton, Attorney General,* for plaintiff in error, cited:
art. 5, sec. 9, of Constitution; R. S., 1198; Munson *v.* Hallowell, 26
Tex., 475; Calhoun *v.* Burton, 64 Tex., 510; Traes *v.* Clews, 115 U. S.,
528; Ripley *v.* Withee, 27 Tex., 14; Auding *v.* Perkins, 29 Tex., 348;
Ransome *v.* Bearden, 50 Tex., 127; Wood on Lim., sec. 276.

*A. M. Jackson, Jr.,* for defendant in error.

ROBERTSON, ASSOCIATE JUSTICE.—The plaintiff in error instituted
this suit in the district court of Archer county to recover a number of
tracts of land in that county, alleged to be in possession of defendant
under a title fraudulently obtained from the state under chapter 88 of
the acts of the legislature of 1883, and in violation or evasion of sec-
tion six of that chapter.    The defendant excepted to the venue, con-
tending that the suit could only be instituted in the district court of
Travis county.    This exception was sustained and the suit was dis-
missed.    Chapter 88 does not prescribe the county in which suits for
land purchased under its authority, but in fraud of its terms, shall be
instituted or prosecuted.    Under the law prescribing the venue for
suits generally, this action was properly brought in Archer county.
R. S., 1198 sub-sec. 13.    Chapter 104 of the laws of 1883 has refer-
ence only to suits for land fraudulently purchased under the acts of
1879 and 1881, and section six of that chapter is confined in terms to
the suits authorized in that act.    In the absence of any special
authority or direction, the suit could only be filed in the county named
in the general laws.    The exception to the venue was improperly sus-
tained.
    The defendant also excepted to the petition on the ground that it
appeared upon the face of it that the cause of action was barred, and
this exception was sustained.    The act under which the suit was brought
provides that "every attempt to evade the limitation of this act as to
the amount or class of land one may purchase, by any device whatever,
shall be deemed fraudulent, and the fraud may be shown and the pur-
chase cancelled by the state within one year from the date of sale."
The petition avers that the defendant, though prohibited by the act
from purchasing more than one section in any one county, neverthe-
less, did purchase the several sections described, in the names of various
persons, and it appears in the pleading that the sales to those various
persons were all made more than twelve months before the commence-

ment of this suit.   It was also alleged, in anticipation and avoidance of the bar, that the defendant and the instruments by which it had acted in making the fraudulent purchases had fraudulently concealed from the state the fact that the purchases were made by and for the benefit of the defendant until less than a year before the suit was filed. How the concealment was effected was stated in averring the features of the fraud.   The purchases were made in the names of given individuals, and in their names the title was kept until less than twelve months before the suit was commenced.   A fraud would have been perpetrated if the purchases had been all made in the name of the defendant, but it was effectually concealed by the use of other names, and was kept concealed as long as the titles remained in their names. The fact that defendant at once entered upon possession is not of itself notice of the fraud.   It would be more reasonably and naturally explained by presumption of a license from the apparent owners, or even a trespass, than by fraud.   The possession is merely a circumstance to be considered in determining whether, with proper diligence, the fraud ought not to have been discovered more than a year before the suit was commenced.

The language in which the limitation is expressed is peculiar, and what the intention of the legislature was is an inquiry not free from difficulty.   Independent of this provision the title of the purchaser would probably be void, as obtained without authority and in violation of express law, and no time would bar the suit of the state to cancel the sales.   By this provision the purchase is made merely fraudulent, and the right of the state to show the fraud and cancel the sales is limited to one year.   As the fraud would not likely appear upon the face of the proceedings, there was obvious policy in confining to the state alone the right to question the sales and in limiting the time in which the state could show the fraud and cancel the title.

Nevertheless, if the limitation had been expressed in the phrases common to statutes of limitation, the provision would, without difficulty, imply the exception universally engrafted upon the statutes of limitation proper, and the time would not be counted from the actual accrual of the cause of action, but, when the cause of action is concealed by fraud, the prescribed period would commence from the discovery of the grounds of action, or from the date at or before which, by the use of the diligence customary in business matters, the right ought to have been known.   But in this act, the phrases must be interpreted to ascertain whether any limitation upon the state's right to sue has been imposed. The language is that the fraud may be shown and the sales cancelled.

This must mean that the facts may be averred and proved in some tribunal, competent under the law, to determine whether what is averred and proved show that a fraud was committed. It must also mean by cancelling the sale that this must be done in some constitutional way. The state could not conclude the rights of the purchaser upon the validity of the sale except by a decree of court, and we may, therefore, safely assume that it was intended by the phrase under discussion to authorize a suit in a court of competent jurisdiction to cancel the sales on the ground of fraud. It cannot be held that the decree must be rendered in twelve months, though the language is that "the fraud may be shown and the purchase cancelled by the state within one year from the date of the sale." It must be determined that this limitation is upon the state's right to sue, and in view of the fact that a final judgment may be delayed in any cause for at least one year, and through means of delay provided by law, it must be construed as a limitation upon the commencement of suits, and not as prescribing a period within which the suit must be ended by a judgment for the state, or be dismissed. Any other construction would involve a charge that the legislature had authorized a great volume of litigation to be ended without adjudicating the issues involved.

The suits authorized are required to be filed within twelve months from the date of sale. If any person or corporation purchases more land, or land of a quality other than provided in the act, the fraud is complete when the purchase is made, and the state's right of action accrues at the date of sale. No fraud can be committed under this law, which does not confer upon the state a right to sue coeval with the sale. When, therefore, it is said that the suit shall be brought within one year from the date of sale, no more and no less, is meant than if the provision were for suit within one year from the date of the accrual of the cause of action.

The peculiar phraseology of the clause is susceptible of the same interpretation as if the limitation had been expressed in the language generally used in statutes of limitation. The language that the fraud may be shown and the purchases cancelled by the state within one year from the date of sale, may have been used to convey the same idea as if the legislature had said that purchases in fraud of the act may be avoided by suit by the state to be commenced within twelve months from the date of the accrual of the cause of action.

As already stated, if the latter expression had been used, there would be no difficulty, for the qualification universally implied in laws prescribing a limitation of actions would be implied as a part of this act. Whether in departing from the established forms of expression it was

the purpose of the legislature to escape the implications usual to such provisions, is the question. If such was the purpose, it could certainly have been more plainly indicated by an express negative than by merely coining new phrases. As it is, the new phrases are susceptible of the old construction, and, in view of the policy of the law, we believe that to be the proper construction. It could scarcely have been intended that the fraudulent purchaser should reap a benefit from an aggravation of his offense by the fraudulent concealment for twelve months of the character of his purchase. The purpose was not to punish a want of shrewdness, but a want of honesty. It was not designed to cancel purchases fraudulently made, and allow those to escape fraudulently made but in which also the fraud was fraudulently concealed. It is contended by the defendant in error that as fraud is the very cause of action, and in the mind of the legislature, the qualification would have been expressed if it had been intended that fraudulent concealment would extend the period of limitation. The cases in which the period is postponed by concealment of the cause of action are generally those in which the cause of action itself is a fraud. Wood on Lim., sec. 276. The largest class of suits brought by assignees in bankruptcy are those arising from frauds upon the bankrupt act; yet the two years prescribed within which suits are to be brought by or against the assignee does not commence to run against the assignee asserting a right arising from a fraud upon the act, until the fraud, if concealed, is discovered. Baily v. Glover 21 Wall., 342. When it is considered that fraud in one or another form enters so frequently as an element in the various causes of action prescribed by law, it may be assumed to be in the mind of the legislature in the enactment of every statute of limitation, and perhaps the only reason why the qualification being considered is never expressed is that it is universally implied.

We conclude, that the court below also erred in sustaining the exception to the petition based on the ground that the cause of action appeared on the face of the pleading to be barred. If this holding is not in consonance with the policy conceived in the enactment of chapter 88, of the laws of 1883, that policy can be more definitely indicated in future legislation. A contrary holding would place the majority, if not all the cases, arising under that act, beyond the power of the legislature, if its purpose by such holding would be misinterpreted. The judgment is reversed, and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered June 4, 1886.]