ALPHONSO DIBBRELL et al. v. THE GEORGIA HOME INSUR-
ANCE COMPANY.

*Insurance — Forfeiture — Waiver — Contract — Statute of Limita-
tions — Agency — Estoppel.*

1. A stipulation in an insurance policy that a failure to bring suit within a time therein prescribed after loss should constitute a forfeiture, is *a contract*, and not a statute of limitations, and may be waived, or the party for whose benefit it was provided may be estopped by his conduct from insisting upon its enforcement.

2. The stipulation usually inserted in policies of insurance that no agent of the insurer is authorized to change the terms of the contract, and that such terms shall not be waived except in writing endorsed on the policy, does not extend to conditions to be performed after a loss is incurred.

110 — 13

3. The authority conferred by an insurance company upon its agent in adjusting a loss to require or dispense with the production of papers, under a stipulation to that effect in the policy, necessarily involves the authority to waive compliance with another stipulation requiring suits to be brought within a specified time.

4. And where such agent did, from time to time, make successive demands for books and papers, the production of which necessarily consumed the time within which suit was required to be brought by a stipulation in its policy, the said stipulation was waived, and the insurer was estopped from insisting on its enforcement.

MERRIMON, C. J., dissenting.

This was a CIVIL ACTION, tried at May Term, 1891, of the Superior Court of VANCE County, before *Whitaker, J.*

The defendant rested its defence solely upon the stipulation contained in the policy that no suit brought for the recovery of any loss and founded upon the policy should be sustainable in any Court, unless instituted " within twelve calendar months next after the loss shall have accrued."

The policy contained also another stipulation, which is as follows:

" If required, the assured shall produce books of account, and other papers and vouchers, and exhibit the same for examination either at the office of the company or such other place as may be named by its agent, and permit extracts and copies thereof to be made, and shall also furnish the original or properly certified duplicate invoices of all property hereby insured, whether damaged or not damaged."

It is admitted that the plaintiffs paid all the premiums that were due up to the time when the building, together with " the stock of leaf tobacco (their own or on commission, or held in trust for others), contained in the four-story brick building " insured by the policy, were destroyed by fire on the 31st of July, 1888. It is also now agreed that the plaintiffs are entitled to recover, as the value of the tobacco

burned, one thousand dollars, if their right of recovery has not been forfeited under the conditions of the policy.

It was in evidence that R. L. Dibbrell, of the plaintiff firm, had a conversation with R. L. Spencer, at Henderson, soon after the fire, when he came as adjuster of the defendant company to adjust the loss, and that said adjuster told him that the plaintiffs' "books were not straight, but he would give time to straighten them out, and he would adjust the loss." R. L. Dibbrell further testified, that "in May, 1889, about the 5th, we asked Spencer what impediment was in the way preventing us from making a settlement of the loss with the company. He did not make it very clear to me what his requirements were. My impression is, that he required us to get up duplicate warehouse bills for the January preceding the fire, or a January preceding the fire, and he assured us that when that was done he would make a settlement with us. My brother requested him to put in writing what he required of us, but he did not do this. My brother said to him, 'Suppose the other adjusters require something else of us, what about that?' and Spencer said there would be no trouble about that. What was meant by duplicate warehouse bills, was duplicate bills of purchases made for the warehouse—the originals had been destroyed by the fire."

On May 7th, Spencer, the adjuster, wired the plaintiffs at Danville and appointed a day for meeting them in Danville, Virginia, to adjust the loss. Walker, of plaintiff firm, was informed by telegram at Henderson, N. C., to meet him. On the 8th Spencer wrote from Lynchburg, Virginia, that he could not meet Walker till a later day. On the 10th of May, 1889, Messrs. Day & Zollicoffer, attorneys for plaintiffs, addressed a letter to the president of the defendant company at Columbus, Georgia, in which they notified him that unless they should hear from him on the 15th of May, 1889, and should receive a check for $1,000, with interest from October

1st, 1888, they would bring suit. The secretary of the company replied for the president that "the matter to which they referred was in the hands of our adjuster (Spencer), to whom we forwarded your letter for reply. In his letter from, Lynchburg, Spencer wrote that he had wired Eggleston and Ezell, two other insurance agents, to meet him in Danville, but Eggleston replied that he could not come, while he had not heard from Ezell.

After the correspondence between Day & Zollicoffer, attorneys, and the home office at Columbus, Georgia, Spencer, the adjuster, "in whose hands" the president had placed the matter, addressed to plaintiffs the following, letter dated Columbus, Ga, May 22d, 1889:

"*Dear Sirs:*—Returning from Danville I missed seeing Mr. Eggleston in Atlanta. Since then I have written him a full account of our interview, and am just in receipt of his reply. He makes no further suggestions as to your statement in substantiation of the loss of D. & W., and, as far as I know, the information suggested when we parted, viz., purchases according to warehouse book, is the proper method of proving loss according to your last showing. If Mr. Walker will get this data, I will endeavor to meet him in Henderson and check it over about the last of the month. I leave for Norfolk to-night. You can address me there as soon as you can hear from Mr. Walker, and let me know what progress he is making in getting up the desired information.

Yours truly,

(Signed)     R. P. SPENCER, S. A."

Meantime Spencer, though behind his appointment, had met plaintiffs at Danville, Va., between the 10th and 15th of May, 1889. As to this interview, R. L. Dibbrell testifies as follows:

"A. Dibbrell, R. L. Dibbrell and Dibbrell Bros.' bookkeeper, by name, Conroy, were present. We told Spencer that we had brought our books up, and that we would like for him to state any objection he had; that we were anxious for a settlement. He asked us when we took our last inventory. We told him it was our habit to take the first of each January, but owing to illness of one of our firm it was not taken 1st January, 1888, but was taken 1st January, 1887. He then said, 'we will start from that day, and I will point out any objections I may have, and give you an opportunity to explain'; so, taking up January, 1887, he detected that we had sold more tobacco than we had bought, according to showing of our books, and asked for explanation. I told him I could not tell without reference to my purchase books, or warehouse books. He then said we could not adjust the loss at that time, but would have to have proof of correctness of our books, and asked me to go back to Henderson, get up the bills for January, 1887, and told me when I had done so to advise him, and he would come to Henderson, and we would have no further trouble in adjusting the loss. We then said to him, "Suppose the other companies should raise some objection?' He remarked that other companies were holding back for his satisfaction, and that when he was satisfied they would pay too. We asked him to put this in writing, but he did not do so. Saw Spencer after this time at Henderson, about a month later. Had conversation with him. He met me at Henderson by appointment."

As to the last interview about 1st June, 1889, at Henderson, the same witness testified:

"He asked me if I had gotten the bills asked for by him at Danville. I told him I had, and presented them to him. He remarked that I had them for only one month, January, 1887. I replied, that was all he demanded. He said he asked for them from July 31st, 1888, back to January 1st, 1887. I told him I was sorry the mistake had occurred,

and if he had put his demand in writing, as requested at Danville, we could easily prove who was to blame, and asked him to be certain there was no further misunderstanding, and please, then, submit in writing what he wanted, which he did.   I have made search for this writing, but cannot find it; have made diligent search for it, but cannot find it. He, by that writing, required me to get duplicate warehouse bills for eighteen months, beginning at February 1st, 1887, and ending July 31st, 1888.   I told him that it had taken me about a month to get bills for one month, and that it would take me nearly six months to get the bills now asked for by him.   He said I would have to do the best I could, and when I did get the bills to let him know, and he would meet me and adjust our claim.   I at once went to work to get these bills.   It took me until January, 1890, to get the bills; then I wrote to Spencer and told him I had gotten these bills and was anxious to get the matter settled.   He made no reply to this letter.   For fear he had not gotten my letter, I wrote him another and registered it.   This is the first letter, dated January 14th, 1890 :

'HENDERSON, N. C., January 14, 1890.

MR. R. P. SPENCER, *Columbus, Ga.*

*Dear Sir:*—After a long and diligent search, I think we are now prepared with the statements asked for by you to assist in adjusting the losses of Dibbrell & Walker in fire of July 31st, 1888; so we will be glad to meet you in Danville, Va., at the earliest date you may suggest, and hope to have your early reply.

Very truly yours,

WILLIAM H. WALKER.'"

Ques. Why did you delay bringing this action against the defendant company?

Objection by defendant.   Overruled.   Exception.

Ans. " Because I had been assured by Spencer that as soon as I could furnish him these duplicate warehouse bills the company would settle with us without a suit."

"The question in Henderson was the amount of loss; same at Danville.

I used all the diligence I could to get the duplicate warehouse bills."

R. L. Spencer testified, among other things, that he received proofs of loss _____ of May after September 25th, 1888 (the fire having occurred July 31st, 1888), and made no objection; that he did not think it incumbent on him to do so, or incumbent on him to protect persons insured in any company, and that he said nothing about the limitations of the policy, and that he was authorized to settle losses by fire, and that he did not point out proof of loss in writing because it was not incumbent on him to do so; that when he looked over the warehouse bills produced by Walker, June 1st, 1889, he told him that these were not all that he had asked for; that he made no further demand, nor did he make any promise.

It is now admitted that the proof of loss forwarded September 25th, 1888, in less than sixty days after the fire, was sufficient, and it is agreed that the loss was one thousand dollars, which defendant company must pay unless the plaintiffs forfeited their right to recover by delay in bringing suit till June 4th, 1890.   The defendant asked the following instructions:

1. That by the terms of the policy there can be no waiver of the limitation clause unless it is in writing.

2. That there is no evidence that R. P. Spencer had authority to waive the limitation clause of the policy.

3. That there is no evidence that the defendant waived the limitation clause of the policy so as to excuse plaintiffs from bringing their suit within time.

4. That upon the plaintiffs' own evidence the jury must find that the plaintiffs' action is barred by the limitation clause of the policy.

5. That the burden of proof that there was a waiver of the limitation clause is upon the plaintiffs.

6. That negotiations between the plaintiffs and defendant concerning the amount of the loss cannot have the effect of a waiver, if there was time within the twelve months from maturity of the policy in which to bring suit.

7. That if the jury should believe that Spencer demanded further proofs in June, 1889, that it was incumbent on the plaintiffs to obtain them in a reasonable time.

8. That if no negotiations were pending between the plaintiffs and defendant's agent between the date of the receipt of the proof of loss and the 10th of May following, that interval must be counted against the plaintiffs on the question of limitation.

9. At least, the time between sixty days after the receipt of the proof of loss and the 10th of May following must be counted against the plaintiffs.

The Court declined to give the first, second, third and fourth prayers for instruction. The fifth, sixth and seventh were given; the eighth was given, with the addition, "unless you should find that the defendant required further and additional proof;" and the ninth was given with the same addition. The defendant excepted.

The Court charged the jury that the limitation within which the suit should be brought would begin to run from the time when the loss became due and payable under the terms of the policy.

"If you should find that the defendant's adjuster required the plaintiffs to produce duplicate warehouse bills, then the amount due under the policy would not be payable until the said duplicate warehouse bills were produced or tendered; and if you should find that on the 1st of June, 1889, the

defendant's adjuster required the plaintiffs to produce certain duplicate warehouse bills, then the plaintiffs would be entitled to a reasonable time within which to procure and produce the same, and the limitation in which the suit should be brought would not begin to run until the expiration of that time." To this charge the defendant excepted.

" If you should find that the plaintiffs were induced to delay bringing their action by the promise of the defendant's adjuster to pay the amount due under the policy, and that such promise was made for the purpose of inducing the plaintiffs not to sue within the period prescribed in the policy, then you will answer the third issue, Yes; otherwise, No." To this charge the defendant excepted.

### ISSUES:

1. Did the plaintiffs make proper proof of the loss in accordance with the terms of the policy? Ans. Yes.

2. Was plaintiffs' action commenced within the time limited in the policy? Ans. No.

3. Has the defendant duly waived the limitation clause of the policy? Ans. Yes.

4. Is plaintiffs' action barred by their failure to commence their action within the period specified in the insurance policy? Ans. No.

5. Was the failure to commence action by plaintiffs against defendant within the time specified, caused by the inducements, actions or promises of defendant? Ans. Yes.

Thereupon, judgment was entered for plaintiffs, and defendant appealed.

*Mr. A. C. Zollicoffer,* for plaintiffs
*Mr. J. W. Hinsdale,* for defendant.

AVERY, J.— after stating the case: In his first interview
with the plaintiffs, soon after the fire, which occurred July
31st, 1888, the adjuster of the defendant told them that
their "books were not straight, but he would give them time
to straighen them, and would (then) adjust the loss." Inside
of the sixty days limit fixed in the policy, the plaintiffs
forwarded proofs of loss, which seem now to have been suf-
ficient, as no further objection is urged to them. After
waiting for an acknowledgment of the receipt of proof of
loss, or for some further statement of the objection to their
books, until May, 1889, the plaintiffs seem to have deter-
mined upon aggressive action for the recovery of their demand
against defendant. Meantime Spencer, the adjuster, says
that he made no objection to the proof of loss because it
was not incumbent on him to do so.

So soon as the plaintiffs began to move, first, by insisting
upon knowing the adjuster's objection to a settlement, and
then, on May 10th, 1889, by demanding, through their attor-
neys, of the president of the company the immediate pay-
ment of $1 000, with interest from October 1st, 1888, the
adjuster seemed to feel it incumbent on him to meet them
with counter demands for duplicate bills of all of the tobacco
received at the warehouse in January, 1887. When the
plaintiffs had sent for these bills and met Spencer again,
they were informed that he insisted, according to the stipu-
lations in the policy, that he should have for examination
duplicate bills of all tobacco received at the warehouse from
January 1st, 1887, till July 31st, 1888. As the policy covered
tobacco in the warehouse that was owned absolutely by
plaintiffs, as well as that consigned to them to sell on com-
mission, he contended that he had the right to compare the
books and the duplicate bills. When told by the plaintiffs
on June 1st, 1889 (eleven months after the loss was sustained),
that it would then take them six months to comply with his
new demand for duplicate bills for eighteen months instead

of for the month of January, 1887, only, Spencer replied that plaintiffs must do the best they could and inform him when they should get the bills and he would adjust the loss. The plaintiffs, taking him at his word, began to get up duplicate bills; but according to the uncontradicted testimony of R. L. Dibbrell found it impossible to finish the work before January 1st, 1890. When they *did inform* the adjuster of their readiness to comply with his demand, they could not induce him to answer even a registered letter communicating the fact. He then claimed that while the plaintiffs were engaged in the vain effort to comply with a demand performed in accordance with one stipulation of the policy, they had forfeited their right of action under another stipulation, which restricted them in its exercise to twelve calendar months after the loss occurred. The adjuster had felt it incumbent on himself to warn them of the Scylla of defective proofs, but had carefully refrained from suggesting that, in avoiding that, they would be stranded on the Charybdis of delay in initiating suit. If they had brought their action when their counsel proposed to issue summons on the 12th of May, 1889, the defendant would have resisted their recovery, upon the ground that they had failed when "required" to "furnish original or properly certified invoices of all property insured." The original bills of tobacco bought by them or sent by customers for sale were destroyed, and duplicates could not be gotten in less than six months.

The enforcement of both conditions of the policy at the same time was not possible, and the question, therefore, naturally arises whether, by demanding compliance with the one stipulation, the agent of the company did not waive the right to insist upon the performance of any other, the enforcement of which was inconsistent with his own demand. It seems to us, that if the adjuster had a right to insist upon the production of the vouchers, or to waive such proof as he deemed best for the company, such power necessarily involved

the authority also to waive the requirement that the action should be brought before such papers could be obtained. Wherever a company empowers an agent specially to do, or the scope of his agency permits him to do, any act inconsistent with the idea that the company will insist upon a forfeiture under a given condition in the policy, then such act when done by him must be construed as a waiver of the right to demand its enforcement. 2 May Ins., §§ 505 and 497. This principle has been distinctly recognized by this and other Courts of the country so often that it ought not to be deemed necessary to cite authority in support of it. In the case of *Grubbs* v. *Insurance Co.*, 108 N. C., 477, this Court held that where an adjuster required the insured to furnish invoices of goods destroyed, proofs of loss, or plans and specifications of buildings burned, or to appear for examination, such act amounted to a waiver of the right to insist upon a forfeiture for failure to comply with a condition of the policy relieving the company from the contract, in case of subsequent insurance of the same property without the written consent of the company endorsed on the policy. This view is sustained by the decisions of other Courts, some of which have emanated from the most eminent jurists of the country. *Insurance Co.* v. *Kittle*, 39 Mich., 51; *Titus* v. *Insurance Co.*, 81 N. Y., 410; *Connor* v. *Insurance Co.*, 53 Wis., 585; *Webster* v. *Insurance Co.*, 26 Wis., 57. In Grubbs' case the adjuster made the demand, as in this case, for duplicate invoices in place of those destroyed by the fire, and the ruling of the Court rested on the very substantial reason that if the adjuster, acting in the scope of his authority, insisted that the insured should incur the expense of collecting these invoices, such a demand was inconsistent with the idea that the policy was forfeited. A persistent demand for proofs, with full notice that they could not be gotten till six months after the expiration of the limit of twelve calendar months (and then by incurring expense and performing

much labor), was an act in the scope of the adjuster's author-ity, but utterly inconsistent with the present contention of the company that the right of action was forfeited by failure to issue a summons before July 31st, 1889. Speaking through its adjuster, the corporation said, in effect, at the end of eleven months after the fire, "if you sue now, the company will resist recovery on the ground that you have failed to furnish duplicate invoices on the demand of its authorized agent, in accordance with the conditions of the policy." *Ind. Insurance Co.* v. *Capehart,* 108 Ind., 270. When by this shrewd device, the insured, who has paid the premiums and com-plied with his contract, is induced to engage in the laborious and expensive work of collecting duplicate invoices of tobacco received for eighteen months before the fire, and to allow twelve calendar months to elapse while so occupied, without instituting suit, the adjuster having played his part, is relegated to the background, and the company, by its counsel, comes into Court and says: "It is true the adjuster had the right to insist upon further proofs of loss under the condition of the policy, but, in fact, sufficient proof had already been furnished him by the insured, though it was not incum-bent on him to admit it, and he had a right to insist, as he did, upon the insufficiency of the proof sent on September, 25th, 1888; but the adjuster was only a special agent as to the stipulation limiting the time bringing the action." By the terms of the policy the insured was bound to furnish proofs of loss within sixty days after the fire occurred, and it was not on argument, and we suppose will not now be denied, that the adjuster or other agent of a company entrusted with the duty of receiving and passing upon the statement of the loss, has, by implication arising out of the authority given him, the power to extend the time for furnishing the proofs. *Insurance Co.* v. *Schollenburger,* 44 Penn. St., 259.

So it is well settled that, if instead of extending the time for filing proofs of loss, the adjuster, who is charged with the

duty of examining them, informs the assured before the expiration of the sixty days that he denies the justice of his claim and will not pay it, such conduct, by implication, renders it unnecessary to make out a statement of loss, and is held to be a waiver of the requirement to furnish it, as well as of the condition that suit shall not be brought within that time. *Insurance Co.* v. *Jacobs*, 66 Texas, 366; 2 May, § 504. As a general rule, if the insurer, through the conduct of any agent acting within the scope of his authority, lead the insured into an infraction of one of the conditions of a policy by insisting upon the performance of a duty enjoined by another clause of the policy, and inconsistent with the observance of such condition, the insurer will be estopped from insisting upon a forfeiture. 2 May, p. 1144 and notes 2 and 3, §§ 497, 499. And it has been expressly held that "statements by a local insurance agent that the plaintiff's loss was all right," and that the company would pay the amount, constitutes a waiver by the company of the clause in the policy requiring formal proof of loss, and also " the one barring suits not brought within one year." *Ide* v. *Insurance Co.*, 2 Burr., 235; 2 May, § 504. The authorities cited, and many others, recognize the power of even a local agent, while acting within the scope of his authority, to waive the forfeiture prescribed for the infraction of a given condition in a policy by leading him into the reasonable belief that it will not be insisted on, and they also lay down the principle that the company is estopped in such cases from taking advantage of the breach of the condition, because it would be fraudulent to do so. In *Muse* v. *Assurance Co.*, 108 N. C., 242, it is declared that such stipulations, operating as forfeitures, are construed strictly, and comparatively slight evidences of waiver have been held sufficient to prevent their enforcement. *Ripey* v. *Insurance Co.*, 29 Barb., 552; *Ames* v. *Insurance Co.*, 14 N. Y., 253.

Counsel for defendant seem to have overlooked the fact that the plaintiffs are not insisting that the defendant company, by the conduct or the words not reduced to writing of its authorized agents, could extend the operation of a statute of limitations, but that it could by language uttered and acts done by such agents, while in the line of duty, waive the exaction of a forfeiture, which is not favored by the Court. Says Judge CHRISTIANCY, in *Insurance Co.* v. *Hall,* 8 Cooley (Mich.), 211, in referring to a stipulation similar to that under consideration: "If valid at all, it was valid as a contract, not as a statute. A limitation fixed by statute is arbitrary and peremptory, admitting of no excuse for delay beyond the period fixed, unless such excuse be recognized by the statute itself. But a limitation by contract (if valid) must, upon the principle governing contracts, be *more flexible in its nature,* and liable to be defeated or extended by any act of the defendant which has prevented the plaintiff from bringing his action within the prescribed period." In that case it was held that the condition was waived by furnishing no opportunity to plaintiff to serve process just before the expiration of the twelve months. A case directly in point is *Ames* v. *Insurance Co., supra,* wherein, discussing the waiver of a similar condition that suit must be brought within six months, the Court said: "The defendants had it in their power by objecting to the proofs of loss and neglecting or refusing to file them, to extend the time in which they were required to pay beyond the period of six months after the occurrence of the loss, and in such case clearly it could not be pretended that the insured had stipulated away his right of action, but the defendants would be deemed to have waived the twelfth condition. In this case the proofs of loss were delivered to the defendant some nine days after the fire. They were retained without objection *eighty-five days,* or within five days of the time when the loss was due and payable by the ninth condition. It was then first suggested by the secretary that

the proofs were incomplete in not setting forth, as required, whether or not the insured property was encumbered. Seven days thereafter, and on the 14th of October, the plaintiff transmitted an affidavit to the company supplying the alleged defect. No further objection was heard from the defendants, but they had secured all that was probably desired—an extension of time for ninety days from the 14th of October, and put it out of the power of the plaintiff to successfully maintain an action commenced within six months after the loss occurred. He was told in effect that the defendants would insist on the terms of the ninth condition (which provided that suit could not be brought for ninety days after filing proof of loss) as to the time when the loss was due and payable, and that, if he commenced an action to avoid the bar prescribed by the twelfth condition, they should interpose the defence that by the contract the insurance money was not yet due and payable. It cannot be doubted that the defendants intended to and did waive the limitation stipulated by the twelfth condition." This opinion is cited with approval by leading text-writers and many of the Courts. Says May (vol. 2, § 505), " Thus the insured is estopped to object to a failure to bring suit within the time limited by an offer to pay the loss afterwards or when such failure is induced by the conduct of the insurer"—citing Ames' case to sustain the position.

In *Muse* v. *Assurance Co., supra,* this Court, following the current of authority, held that the stipulation that there should be a forfeiture unless suit should be brought within twelve months after the loss, operated as a contract which might be waived, and not as a statute of limitation. Indeed, in that case it was declared that plaintiff might have submitted to judgment of nonsuit and brought a new action within a year after such judgment, though after the expiration of twelve months from the fire, if the limit had been imposed by a statute instead of by contract. When the rights

of Muse were declared lost, because the principles applicable to the statute of limitations did not apply to a contract, we are at a loss to understand how counsel can contend that in the case under consideration the plaintiffs have lost their right of action because the bar of the statute of limitations cannot be extended except by an agreement in writing and upon consideration, or at any rate a direct promise not to plead it. Neither *Joyner* v. *Massey*, 97 N. C., 148, nor any of the class of cases to which it belongs apply to that at bar. We might concede the law in its application to statutes of limitation to be just what counsel insisted that it was, and still the plaintiffs would be protected by the well-established principle that contracts providing for forfeitures are more " flexible " than statutes of limitation, and may be waived by very slight circumstances. *Muse* v. *Assurance Co., supra; Insurance Co.* v. *Hall, supra;* Ames' Case, *supra;* 2 May, § 505. The usual stipulation in a policy that no agent of the company is authorized to change its terms or conditions, and that they shall not be waived except in writing endorsed on the policy, does not apply to conditions to be performed after the loss is incurred, nor invariably even to the warranties of the contract if any fraud be practiced. *Carson* v. *Insurance Co.,* 43 N. J., 300; *Whitted* v. *Insurance Co.,* 76 N. Y., 421; *Insurance Co.* v. *Capehart,* 108 Ind., 270; *Fishbeck* v. *Insurance Co.,* 54 Cal.; 422; *Day* v. *Insurance Co.,* 81 Me., 244; *Insurance Co.* v. *Weiss,* 106 Pa. St., 20; *Hornthal* v. *Insurance Co.,* 88 N. C., 71; *Dupree* v. *Insurance Co.,* 92 N. C., 422; *Ibid,* 93 N. C., 240; *Grubbs* v. *Insurance Co., supra; Follette* v. *Insurance Co.,* 107 N. C., 240; *Lamberton* v. *Insurance Co.,* 39 N. W. Rep., 76. Where, as in our case, the insured is led by the conduct of an agent of the company, acting within the scope of his authority, to believe that the stipulation will not be insisted on, or such agent insists upon another stipulation inconsistent with its enforcement, the condition is deemed waived without the endorsement on the policy.

110—14

The plaintiffs' counsel, on May 10th, 1889, demanded a settlement of the president, and the secretary replied referring them to the adjuster, who had "the matter in hand" and would treat with them, thus waiving directly their right to arrange the matters in controversy, if such authority would otherwise have been exclusively in them, and holding the adjuster out to the plaintiffs as armed with full power to represent the company and treat with the plaintiffs or their attorneys in their stead (see letter of the secretary) as fully as they or either of them could do. The facts in our case, therefore, present a peculiar aspect, in that the adjuster is expressly clothed with plenary power in the conduct of the settlement, as far as the president and the secretary of the company could confer such authority. Considering Spencer then, as the representative of the president, and so held out by his letter, he had authority, either directly or by implication, as a general agent of the company, in the language of Chief Justice SMITH in *Hornthal* v. *Insurance Co., supra,* "to waive a forfeiture and dispense with what would otherwise cause it."

We are aware that it is possible to find authority in support of a different view of this case from that taken by us, but we prefer, as between conflicting opinions, to follow that line of authorities that does not leave an ignorant individual who has made an honest effort to perform his contract at the mercy of shrewd agents of corporations because of stipulations with which he has been bound hand and foot. We have no sympathy with any construction of contracts which would leave the Courts powerless in the presence of an acknowledged fraud, though it be perpetrated by hedging one about with restrictive conditions and forfeitures, so that pursue what course he will he runs counter to a stipulation which, if strictly enforced, is fatal to his recovery of the money justly due to him in consideration of the fact that he has paid his premiums and comes before the Court with clean hands. Under such circumstances technical defences

should be disregarded upon slight evidence of a waiver of rights under them, in order to do substantial justice.

We think for the reasons given that there was no error in the charge of the Court below of which the defendant had just cause of complaint. His Honor put upon the plaintiffs the burden of showing that the adjuster made the promise to pay for the purpose of inducing delay, and then taking advantage of it under the limitation stipulation, though we consider the demand of the adjuster for the performance of any condition that he had a right to insist on and which was inconsistent with the bringing of the action within the limited time a waiver of that stipulation. *Ames* v. *Insurance Co., supra.* It seems to us, also, that the Judge might have told the jury that if the stipulation was waived by the conduct and language of the adjuster, then the plaintiffs were left free from any restriction as to the time of bringing suit except such as was imposed by the statute of limitations. The waiver, which the jury found was made by the adjuster, grew out of his insisting upon proofs which it required an indefinite time to procure and furnish, and it must be construed to have been absolute and unconditional, not an extension of its operation while the proofs were being produced. If the right to demand the forfeiture was waived at all, it was by such conduct on the part of the adjuster as made it inequitable for the company to insist upon the stipulation, or in other words, it was because the defendant was estopped by its conduct from enforcing that clause of the contract then or afterwards. 2 May, § 505, and other authorities cited *supra.* If the defendant was estopped from enforcing the forfeiture by matter *in pais* such as the conduct of its agent, inconsistent with the right to demand a compliance with it, it is difficult to understand how the estoppel could operate to defer the enforcement instead of destroying the right to insist upon it entirely.

MERRIMON, C. J., (dissenting): The policy sued upon in this action contains this clause of agreement: "It is expressly covenanted by the parties hereto that no suit or action against this company for recovery of any claim by virtue of this policy shall be sustainable in any Court of law or chancery, unless commenced within twelve months next after the loss shall have occurred; and should any suit or action be commenced against this company after the expiration of the aforesaid twelve months, the lapse of time shall be taken and admitted as conclusive evidence against the validity of such claim, any statute of limitation .to the contrary notwithstanding." The Court has held that such agreement is valid and binding on the parties to it. *Muse* v. *Assurance Co.*, 108 N. C., 240; *Manufacturing Co.* v. *Assurance Co* , 106 N. C., 28. The alleged loss of the plaintiff occurred on July 31, 1888, and more than twelve months next thereafter, to-wit, on the 4th of June, 1890, this action began. Hence, by the express agreement above set forth of the parties, the alleged cause of action is without any force or validity, and not actionable.

The plaintiffs allege, however, that their delay in bringing their action was induced by the defendant. " And they further say that defendant ought not to be allowed to set up said limitation of forfeiture as a defence to this action, since the delay in bringing this suit was caused by the actious and promises of the defendant, which induced plaintiffs to believe that the said limitation would not be pleaded or relied on."

But the policy contains this further clause of agreement: "And it is further expressly covenanted by the parties hereto that no officer, agent or representative of this company shall be held to have waived any of the terms and conditions of this policy, unless such waiver shall be endorsed hereon in writing." This agreement does not contravene any principle or policy of the law. It is reasonable, and there is no legal reason why it is not valid. The parties might make it,

as they did, a material part of the contract of insurance. It is not pretended that the defendant or its agent *waived* the agreement that the plaintiff in case of loss should bring his action within twelve months next after it accrued by writing or endorsement on the policy, or in writing at all. The plaintiffs knew of this agreement; it is presumed, and must be taken, that they had knowledge of it; it is not contended that they did not. It was, therefore, their laches if they allowed more than twelve months to elapse after their loss before they brought their action without having a waiver as to the lapse of time endorsed on the policy. In the face of the express stipulation above recited, and the absence of an endorsement of such waiver on the policy, and in the absence of all agreement of such waiver, I cannot see any just or valid reason, legal or other, why the agreement of the parties shall not be enforced according to its plain terms and purpose.

It is not alleged that the defendant or its agent fraudulently induced the plaintiffs to delay the bringing of their action, but simply that they were induced to do so by the defendant's " actions and promises." It appears that the plaintiffs furnished their proof of loss. The defendant's agent (the adjuster) insisted that they should furnish certain other evidence of the extent of their loss. But the plaintiffs did not ask the agent of the defendant to waive the lapse of time in writing on the policy or otherwise as they might have done; they said nothing on that subject, nor did the defendant or its agent intimate that he had any authority to do so, nor did he promise to do so. There was no evidence sufficient to go to the jury to prove such a waiver by act or promise in writing or otherwise. The evidence relied upon fairly interpreted gives rise to no more than conjecture or the merest inference, that ought not to be allowed to prevail to destroy a plain and express stipulation. If evidence of the waiver, other than a waiver in writing endorsed on the policy, could be competent at all, it should have been clear and distinct,

not such as gave rise to mere inference or possible implication. Moreover, it was in evidence, without contradiction, that the adjuster had "no authority to waive any stipulation of the policy."

This case is very different from *Joyner* v. *Massey*, 97 N. C., 148, and other like cases cited for the plaintiffs. In these cases the defendants expressly asked and induced the plaintiffs not to sue, and promised directly that they would not plead the statute of limitations. The Court properly held that it would be unconscionable and a fraud upon the plaintiffs to allow the defendants to avail themselves of that plea. But here the defendant did not request the plaintiffs not to sue, nor did it promise not to avail itself of the express agreement under consideration. In view of this agreement the waiver should have been clear and distinct, not left to mere inference.

The Court instructed the jury that if the defendant's agent on the 1st of June, 1889, required the plaintiffs to produce certain duplicate warehouse bills, the plaintiffs would be entitled to a *reasonable time* within which to procure and produce the same, and left it to them to determine what was such reasonable time. The view I have taken above renders it unnecessary for me to point out the error in this instruction. I deem it worth while, however, to say that what is reasonable time is not a question of fact for the jury to determine, but is a question of law to be determined by the Court when the facts are found or admitted, and when the facts do not appear the Court should submit the evidence to the jury, instructing them that there would or would not be reasonable time accordingly as they might find the facts in view of varying aspects of the evidence. See *Emry* v. *Railroad,* 109 N. C., 589, and cases there cited. In my judgment there is error, and there ought to be a new trial.

*Per curiam.*                                              Affirmed.